COCHRANE, Appellant, v. NELSON et al, Respondnts.

(189 N. W. 700.)

(File No. 5001.   Opinion filed August 30, 1922.)

1. **Contracts—Free Consent as Essence of—Rule Applied Re Execution of Notes.**

     It is a universal rule of law that "free consent is the essence of all contracts." So held, in determining whether one suing for cancellation of notes executed by him was coerced into making a settlement out of which they grew, through fear of criminal prosecution.

2. **Duress—Cancellation of Notes—Alleged Criminal Conversation, Alienation of Affections as Resultant, Threatened Criminal Prosecution as Duress—Evidence Considered.**

     Although plaintiff's own testimony shows him guilty of a grave indiscretion while being discovered in a room with wife

39—Vol. 45, S. D.

of one of the defendants, yet the evidence fails to warrant finding that he had alienated her affections from her husband, grave doubt existing as to whether he had been guilty of criminal conversation with her. So **held**, where evidence tended to show concerted action between the husband and wife and her step-son to inveigle plaintiff (suing to set aside notes the execution of which he alleged resulted from duress through threats of prosecution for some alleged act) into a room in the husband's house, the alleged conspirators having evidently anticipated the alleged act, the step-son having previously hidden himself in a closet in the bedroom and the husband and another having stealthily arrived at and opened the bedroom door very soon after plaintiff and the wife entered therein; evidence further showing that within twenty-four hours after the alleged act was performed settlement had been procured through a mortgage pursuant to which the notes in question for $9,000 were executed and other property worth $1,000 delivered by plaintiff to the husband; the lawyer (being the local state's attorney) having stated in plaintiff's presence that if the husband filed complaint he would prosecute plaintiff; which situation, with three witnesses ready to swear they had seen plaintiff commit a penitentiary offense, having thus confronted plaintiff. And **held**, evidence shows it was left to the husband and wife to decide whether prosecution would be started, implication being plain that they would unless settlement was immediately made.

3. **Duress—Threatened Prosecution for Alienation of Affections as Alleged Duress Re Promissory Notes—Issue One of Coercion, Not of Guilt Re Alienation of Affections.**

In a suit to cancel promissory notes alleged to have been executed by plaintiff under duress through threats of criminal prosecution for his alleged alienation of defendant's wife's affections, by having criminal conversation with her, the issue involved is, not whether plaintiff was guilty or innocent of the alleged act, but whether such degree of pressure was employed in prevailing upon him to execute the notes as to overcome his free will and coerce him into making a contract he would not otherwise have made.

4. **Contracts—Duress—Coercion, Circumstantial Acts Tantamount to Direct Threats—Rule.**

Coercion may be accomplished by a set of circumstances brought about by designing persons as effectually and wrongfully as by direct threats and menace. Threats, actual or implied, of a prosecution of one in fact guilty of a crime constitutes such coercion as will avoid a contract induced thereby.

5. **Appeals—Error—Brief—Unnecessary Length—Duty to Condense**

### Record—Mass of Trivial Matters, Irrelevancy of.

It is counsel's duty in making up record on appeals to this Court, to condense record as much as practicable and bring up such evidence only as necessary to present reviewable matter. So held, where record covered over 600 pages and included most immaterial, even trivial matters, thus forcing upon Court burden of much unnecessary labor and waste of valuable time. The court rule involved should be more strictly followed.

6. Trial—Findings, Unnecessary Length of—Findings of Evidentiary Facts, Non-necessity, Irrelevancy of.

Where, as in instant case, ultimate facts found by court would not cover more than one page of printed record, yet what purports to be findings of fact, being mere resume of defendant's testimony and statements of evidentiary facts, covered twenty printed pages, such lengthy record is wholly unnecessary and out of place.

7. Appeals—Briefs, Remarks of Federal Supreme Court Justice Re, Commended—Recommended Opening Statement, Statement of Principles Without Argument, Argument, Citations as Sequential to Preliminaries—Value of Brief Introductory Statement Emphasized.

Concerning preparation of brief in this Court, remarks of Mr. Justice Clark of the Supreme Court of the United States in the American Bar Association Journal commended, wherein that learned jurist recommends a short, clear and candid statement of essential facts as opening argument, with result in court below, but without comment; followed with brief statement of principles of law relied upon on appeal, but without argument, and concluding with a statement of result it is deemed should follow; this followed by detailed argument and citations; that such brief and clear preliminary statement are of special value to the appellate bench. That a brief is properly defined in rules of Federal Supreme Court to be a concise abstract or statement of a case, presenting questions involved, and how raised, together with specifications of error relied on and a brief argument with clear statement of points of law or facts to be discussed, with reference to authorities relied upon.

Appeal from Circuit Court, McPherson County. Hon. JOSEPH H. BOTTUM, Judge.

Action by W. J. Cochrane, against Peter Nelson and others, for return and cancellation of two certain promissory notes executed by plaintiff, and for cancellation of a realty mortgage

given to secure same, and for other relief. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Reversed.

Williamson, Williamson & Smith, for Appellant.

George H. Fletcher, and Campbell & Walton, for Respondents.

(1) To point one of the opinion, Respondents cited: McClaire v. Wilson (Colo.), 31 Pac. 502; Kiler v. Wohletz (Kas.), 101 Pac. 474.

POLLEY, J. This action was brought for the return and cancellation of two certain promissory notes, for $4,500 each, and for the cancellation of a real estate mortgage given to secure said notes, and also for judgment for the value of certain Liberty bonds and war saving stamps alleged to have been converted by defendants. Judgment was for defendants, and plaintiff appeals.

Appellant is the owner of a farm three miles northwest of the town of Leola, in McPherson county. During the summer of 1920 the defendants, Peter Nelson and Della Nelson, his wife, resided upon and worked this farm. Appellant lived in Leola, but made frequent visits to the farm, especially during the months of July and August. On the morning of September 3d appellant was found by Peter Nelson, his son, Sigard Nelson, and another party, in a compromising position with the defendant Della Nelson in her bedroom in the dwelling house on said farm. Peter Nelson immediately went to Leola and consulted the defendant A. L. Bartlett, with a view of having Bartlett commence an action against appellant for damages for the alienation of his (Nelson's) wife's affections. Bartlett was state's attorney of McPherson county, and told Nelson that he could not bring a civil action for the offense charged against the appellant. Thereupon, at Nelson's request, Bartlett telephoned to defendant Van Slyke, in Aberdeen, to come to Leola at once, but without stating the nature of the business in hand. Van Slyke was unable to go to Leola that day, but went early the following morning, arriving there at 8 o'clock. He saw Peter Nelson, and after a few minutes' consultation prepared a summons and complaint in an action against appellant, demanding $25,000 damages from him. The summons and complaint were put into the hands of the sheriff for

service, and served on the appellant at his residence in Leola at about 9 o'clock that morning.

Just what took place ·between the sheriff and the appellant at that time is in dispute. Appellant testified that the sheriff directed him to go at once and see Van .Slyke, while the sheriff testified that appellant admitted his guilt and asked the sheriff's advice as to whether he (appellant)˙ had better go and make a full confession. It is a fact, however, that appellant did go back up town with, or immediately after, the sheriff, where they met Van Slyke, to whom the sheriff introduced the appellant. The matter of a settlement of the suit was discussed. They went to the courthouse and into an office that was occupied jointly ·by the state's attorney, Bartlett, and the sheriff, where, after considerable discussion, the suit was settled and dismissed for the sum of $10,000, which was paid to Van Slyke ·by the delivery to Van Slyke of $300 in Liberty bonds, $700 in war saving stamps, and two promissory notes in the sum of $4,500 each, together with a mortgage on appellant's farm to secure the payment of the said notes.

At the time of the above transaction appellant was a man 73 years old. He had lived on the said farm and in the town on Leola many years. He bore a good reputation in the community. He was an active church member, and enjoyed the respect and confidence of his neighbors and acquaintances generally. He was greatly humiliated and depressed by the events leading up to the commencement of the suit, and the fear that a criminal prosecution might follow, and the disgrace and notoriety to follow if the circumstances become public.

[1] It is a universal rule of law that "free consent is the essence of all contracts." The question then becomes: Was· the appellant coerced into the making of the settlement through fear of a criminal prosecution, and was such fear inspired by the Nelsons?

[2] It cannot be doubted from his own testimony that he had, at least, been guilty of a grave indiscretion. ·There is no evidence, however, which would warrant a finding that he had alienated the affections of Della Nelson, and under all the circumstances disclosed by the evidence there may be grave doubt whether he had been guilty of criminal conversation with her.

He claims, and the evidence shows, that his presence at the home of Peter Nelson and his presence in the bedroom of Della Nelson were brought about by the concerted action of Peter Nelson, Della Nelson, and her stepson, Sigard Nelson, and a finding by a jury to that effect would be strongly supported by the evidence. Sigard Nelson admits that he went to town and asked the witness Mat Sherman, a former deputy sheriff and a sort of a detective, to go with him to his mother's home and be a witness to whatever might happen. Sigard appears to have been the moving spirit in the whole enterprise. In furtherance of an apparently concerted purpose, he asked and caused his father to come over to his home that morning, and the same morning Peter Nelson told his wife to go to town and bring Cochrane out to the farm. Sigard got Mat Sherman to come with him from town, and they arrived at the house just in time to meet his father back of the barn. He left Sherman there with his father, to await the arrival of Cochrane and Della Nelson. Sigard himself then went to the house and up to his mother's bedroom, and hid himself in a closet just at the head of her bed, and from where he could see what was going on in the room. When these arrangements were all complete, Mrs. Nelson arrived on the scene with Cochrane. She proceeded to the house. Cochrane put the horse in the barn; then he went to the house. Immediately thereafter Peter Nelson and Mat Sherman came from back of the barn to the house. They removed their shoes, and went stealthily into the house and upstairs. They pushed the door to Mrs. Nelson's bedroom open far enough to see what was going on inside, and then, according to Mrs. Nelson's testimony, the act of intercourse was completed on the bed while these three witnesses watched the proceeding. They then burst into the room and said: "We have caught you." After that things proceeded very rapidly. Within 24 hours Peter Nelson had procured a lawyer from Aberdeen and had made a settlement for $10,000.

We assume that neither Van Slyke nor Bartlett were parties to any of the transactions that took place prior to the time that Van Slyke appeared as attorney for Peter Nelson in the proceeding leading up to the settlement. We assume that neither Bartlett nor Van Slyke said or did anything not strictly within their professional or official duties. It is conceded, however,

that Bartlett did state in the presence of Cochrane that, if the
Nelsons filed a complaint, he would prosecute Cochrane. It would
have been his official duty to do so, and it need not be assumed
that he made such statement with any intent to force Cochrane
to settle. But that statement became a part of the situaion con-
fronting Cochrane, with three witnesses ready to swear that they
had seen him commit a penitentiary offense. It was thus made
clear to Cochrane that it was left to the Nelsons to decide
whether prosecution would be started against him, and the plain
implication to him that they would start such proceedings unless
settlement was made immediately.

[3, 4] The question involved in this case is not whether
appellant was guilty or innocent, but whether such a degree of
pressure was employed as to overcome his free will and coerce
him into the making of a contract that he would not otherwise
have made. Coercion may be accomplished by a set of circum-
stances brought about by designing persons as effectually and as
wrongfully as it may be accomplished by direct threats and
menace.

The weight of authority is to the effect that threats, actual
or implied, of prosecution of one in fact guilty of a crime, will
constitute such coercion as will avoid a contract induced by such
coercion. 9 R. C. L. 709; Richardson v. Duncan, 3 N. H. 508;
Morrill v. Nightingale, 93 Cal. 452, 28 Pac. 1068, 27 Am. St.
Rep. 207; Bane v. Detrick, 52 Ill. 19; Underwood v. Robinson,
106 Mass. 296; Woodham v. Allen, 130 Cal. 194, 62 Pac. 398.

[5]. Before closing this case, we feel it our duty to call coun-
sel's attention to the great and unnecessary length of the printed
record. In making up the record on appeals to this court, it is
the duty of counsel to condense the record as much as practi-
cable, and bring up such evidence only as is necessary to a proper
presentation of the matters that are to be reviewed. In this case
appellant's record, including his brief, covers more than 600
printed pages. The most immaterial, even trivial, matters are
included. We are compelled to go carefully through it all for
fear that something of value might be overlooked. This forces
upon the court the burden of much unnecessary labor and the
waste of much valuable time. It would be a great help to the
court if counsel would observe the rule more carefully, and pre-

serve in the record only such matters as are necessary in the consideration of the questions presented for review. Rodgers v. Penobscot Min. Co., 26 S. D. 52, 127 N. W. 471.

[6, 7] The findings of fact made by the trial court are subject to the same criticism as the briefs of counsel. The material ultimate facts found by the court would not cover more than one page of the printed record; yet what purport to be findings of fact cover some 20 printed pages. They are a mere resume of defendants' testimony and statements of evidentiary facts. This is wholly unnecessary and out of place, and serves no purpose other than to increase the labor of this court in determining the conclusion really arrived at by the trial court. Upon the subject of preparing briefs in this court we respectfully commend a careful reading by every member of the bar who practices in this court of the remarks of Mr. Justice Clarke of the Supreme Court of the United States in the American Bar Association Journal for May, 1922, wherein that learned jurist, among other things says:

"Open every argument with a short, clear, and candid statement of the essential facts of the case, and of the result in the court below, but without comment of any character. Follow this with a brief statement of the principles of law upon which reliance is placed for reversal or affirmance, but without argument of them, and conclude with a statement of the result which it is thought should follow. Such epitomized statement will, of course, be followed by a detailed statement of argument and citation of authorities, but without such an introduction it is often quite impossible even for the most attentive judge to appreciate the incidence and value of either discussion or authority. Incidentally, I may say that such a statement would have saved many a lawyer from those questions from the bench which have sometimes proved so disconcerting to counsel and often disastrous to an otherwise sufficient argument. If I were to return to the bar tomorrow, it would be with my estimate of the importance of carefully preparing the introductory statement of each case greatly magnified by my service on the Supreme Court of the United States. Its importance cannot possibly be overestimated. * * * A brief is authoritatively defined in the rules of the Supreme Court of the United States to be a concise abstract or statement

of a case, presenting the questions involved and the manner in which they are raised, together with a specification of the errors relied upon and a brief argument, with a clear statement of the points of law or facts to be discussed, and a reference to the authorities relied upon in support of each point. * * * There can be no doubt whatever that many a meritorious case has been lost in an over-expanded statement of the evidence, or in the wilderness of inappropriate citation and quotation in which it has been submerged beyond the hope of resurrection in a treatise styled 'brief.'"

The judgment and order appealed from are reversed.