In the Matter of the Application for Disbarment of A. L. Bartlett and L. T. Van Slyke, Attorneys at Law.

## In re BARTLETT et al.

### (197 N. W. 285.)

(File No. 4799.    Opinion filed February 11, 1924.)

1. **Attorney and Client—Extortion—Participation in Extortion Held Unprofessional Conduct.**

   Participation by attorneys in schemes to extort money from persons guilty of illicit sexual relations, who paid to avoid prosecution and exposure, held unprofessional conduct.

2. **Attorney and Client—Disbarment—Disbarment Should Be Resorted to Only Where Misconduct Is Gross and Evidence Establishes Untrustworthiness.**

   Disbarment should be resorted to only where misconduct has been gross, and where the evidence and circumstances are such as to show respondent so lacking in ability or character as to be wholly unfit to be intrusted with the interests of others.

3. **Attorney and Client — Unprofessional Conduct — Unprofessional Conduct Held Not to Require Disbarment or Suspension.**

   Unprofessional conduct in participating in schemes to extort money from persons guilty of illicit sexual relations, held, under the particular facts of the case, not to merit either disbarment or suspension, but to call for reprimand only; respondents being men of ability and not so lacking in character and integrity that they should not be permitted to continue practice of the law.

Application for disbarment of A. L. Bartlett and L. T. Van Slyke. Respondents reprimanded.

*Buell F. Jones,* Attorney General, for prosecution.

*Campbell & Fletcher,* of Aberdeen, and *Waddel & Dougherty,* of Webster, for Respondents.

POLLEY, J. This is an original proceeding, brought on behalf of the state for the purpose of disbarring the above-named respondents, L. T. Van Slyke and A. L. Bartlett, two regularly licensed attorneys of this court. The complaint filed by the Attorney General sets out four separate charges. The first is designated as the Cochrane charge against respondents jointly, while the other three charges, designated as the Briggs charge, the Glennon charge, and the Pecor charge, are against Van Slyke individually.

The matter was referred to C. O. Bailey, a practicing member of the bar, with directions to investigate said charges, take such evidence as he deemed necessary to ascertain the material facts, and to submit to the court his findings of fact and conclusions as determined from the evidence. No recommendations were required and none have been made. A large volume of testimony on each charge was taken and separately filed, and separate findings and conclusions were made and filed on each charge.

We will take up the separate charges in the order above named.

The Cochrane charge grew out of the transactions that resulted in the case of Cochrane v. Nelson et al, decided by this court on the 30th day of August, 1922, and reported in 45 S. D. 609, 189 N. W. 700, where the facts are stated at some length. The action was brought as a sequel to another action that had been brought against Cochrane by one Peter Nelson to recover damages for the alienation of his wife's affections. That case was settled within a few hours after the service of the summons and complaint for $10,000, which was paid to Van Slyke by two notes for $4,500 each, and secured by a real estate mortgage, and $1,000 in Liberty bonds and war saving stamps. Upon this charge the referee found as a fact that—

"Van Slyke, before making the settlement and obtaining the Liberty bonds, war saving stamps and mortgage from Cochrane, had notice of sufficient facts to advise him that the charge upon the part of the Nelsons against Cochrane was a 'frame up' made in pursuance of a conspiracy to blackmail Cochrane."

As against Bartlett the referee found that—

"In the transaction which led up to the settlement made by Van Slyke and Cochrane, on behalf of Peter Nelson, [Bartlett] used, or permitted to be used, his official position as state's attorney of McPherson county to coerce Cochrane into making the settlement."

From these facts the referee concluded:

"That L. T. Van Slyke was guilty of unprofessional conduct in participating and assisting in a scheme to obtain money and property from Cochrane."

And:

"A. L. Bartlett was guilty of unprofessional conduct in using, or permitting to be used, the powers of his office as state's attorney of McPherson county to coerce Cochrane to make a settlement with Nelson for fear of the bringing of a criminal charge against him."

We have examined the testimony taken by the referee, as well as the record in the case of Cochrane v. Nelson et al, and after consideration thereof feel satisfied that both the findings of fact and the conclusions deduced therefrom by the referee are fully warranted by the evidence. It is true that neither of the respondents openly threatened prosecution or exposure of Cochrane if a satisfactory settlement were not made, but the circumstances and surroundings during the negotiations leading up to said settlement, the fact that such negotiations took place in the joint office of the state's attorney and the sheriff would naturally tend to intimidate and coerce Cochrane. Moreover, during the said negotiations the subject of prosecution was mentioned, and, in reply to a question put by Cochrane, Bartlett told him that if a criminal complaint was filed against him by Nelson, that he (Bartlett) would prosecute him. This was the equivalent of telling Cochrane that, unless he paid Nelson enough to satisfy him and keep him from filing a criminal complaint against Cochrane, charging him with the commission of adultery with Nelson's wife, he would prosecute Cochrane on such charge. If Bartlett believed what had been told him by Nelson it was his plain duty to file a complaint against, and prosecute both Cochrane and Nelson's wife for adultery.

The Briggs charge grew out of the collection by Van Slyke of the sum of $2,000 for one Herma Kvidera for illicit sexual intercourse with Briggs. Upon this charge the referee found:

"That Mrs. Kvidera possessed no legal claim against Briggs," and "that the $2,000 paid in settlement was paid to avoid public exposure and disgrace and a possible criminal prosecution"; that "while he made no threats or promises with respect to either publicity or criminal prosecution he knew perfectly well that Briggs was paying the money to avoid the disgrace and possible punishment that would have been entailed by the exposure of his relations with Mrs. Kvidera."

The referee further found:'

That respondent "obtained the sum of $2,000 from W. E. Briggs in settlement of the alleged claims of Mrs. Herma Kvidera, with knowledge that a crime had been committed by Briggs in his relations with Mrs. Kvidera, and with knowledge that the money was being paid by Briggs with the implied understanding that the facts concerning the crime should not be made public and that no prosecution would be instituted at the instigation of Mrs. Kvidera. In other words, the payment of the $2,000 was in the nature of blackmail, levied upon a man guilty of a social crime in fear of exposure and possible punishment."

The evidence was that Mrs. Kvidera was a widow, that Briggs was a married man living with his wife, which fact was known to Mrs. Kvidera, and that she, knowing said facts in regard to Briggs' position, entered into and for a term of two years maintained adulterous intercourse with him. She was without a shadow of legal claim against Briggs.

The Glennon charge grew out of the conduct of respondent in connection with a claim of one Mathilde Weiss against Glennon for damages for seduction and resulting pregnancy. In settlement of said claim Glennon paid to Van Slyke the sum of $3,000, and took from Miss Weiss a receipt in the following language:

"Huron, S. D., 7-23-19.

"Received of D. C. Glennon three thousand dollars in full of all claims, dues and demands to date and for support and maintenance of an unborn illegitimate child, and agree to support and maintain said child through infancy, and I further state that D. C. Glennon never transported me from one state to another at any time whatever, and I hereby satisfy and release said Glennon from all claims of every nature resulting from sexual intercourse.

"Mathilde Weiss.

"Witness: L. T. Van Slyke."

Not having recovered her health after the birth of her child as soon as she expected, Miss Weiss made claim against Glennon for further assistance. Glennon refused to make further payment, and respondent started an action against Glennon for Miss Weiss for the recovery of $25,000 damages, and filed notice of an attorney's lien on the judgment to be recovered for an attorney's fee

of $1,000. This action was placed upon the calendar for trial, but shortly before the time when it probably would have been reached for trial it was dismissed by Van Slyke by direction of Miss Weiss herself. This action was started upon the theory that, while Miss Weiss had given a receipt in full, such receipt was given with the understanding by Glennon that if Miss Weiss should find herself in need of more money that he would pay it. Upon this phase of the case the referee found as follows:

"There is no question whatever but that Glennon was most culpable in his relations with Miss Weiss. There is also no question but that she was herself subject to severe censure. Under all of the evidence in the case it can scarcely be said that she did not have some valid cause of action against Glennon, and Van Slyke was acting within his rights as an attorney in representing her in obtaining settlement with Glennon. It is my opinion that the facts in the case do not show that the acts of Van Slyke in representing Miss Weiss at the time of the settlement and in making the settlement were such that he was acting pursuant to a scheme to blackmail or defraud, although the fact that he charged 50 per cent of the amount paid by Glennon for his services would seem to indicate that for some reason or other he considered his services as worth more than the services of a lawyer ordinarily would be in a case in which an injured woman obtains a settlement from her seducer."

"I am, however, of the opinion that Van Slyke was guilty of unprofessional conduct in instituting the suit against Glennon after the making of the settlement. There is some evidence in the record of some sort of assurance having been made by Glennon at the time of the settlement to the effect that he would not see Miss Weiss suffer in the future, but this evidence is, to my mind, very shadowy and not sufficient to vary the express terms of the receipt. I find it to be a fact that the settlement was intended both by Glennon and by Miss Weiss to be a final and complete settlement; that it was made by Miss Weiss after consultation with her attorney, Van Slyke; that the receipt was prepared by Van Slyke; is in his own handwriting; and that it was fully understood by him that the incident was closed; and that Miss Weiss had relinquished all financial claims against Glennon. In view of these facts I am of the opinion that the conduct of Van Slyke

in instituting the suit for $25,000 damages constituted unprofessional conduct upon his part, and was in the nature of an attempt to blackmail Glennon."

The correctness of the foregoing finding and conclusion is by no means free from doubt. As found by the referee we believe that respondent was acting clearly within his professional duty as a lawyer in collecting the $3,000 from Glennon, but we believe there was sufficient testimony on the part of respondent relative to whether the settlement made at the time of the giving of the receipt was to be final, to have taken that issue to a jury. We believe the most reprehensible conduct of respondent in connection with this charge was the taking by respondent of the sum of $1,500, and the expenses of his trip from Aberdeen to Huron, from this girl, for making this settlement, and the mercenary disposition shown by respondent in filing the notice of attorney's lien filed by him when he commenced the action against Glennon. The work he did in connection with the matter would have been well paid for with from one-fifth to one-third of what he actually got.

The Pecor charge, like the three foregoing charges grew out of alleged illicit sexual relations. Nothing would be gained by going into the filthy details brought out by the evidence. Upon this charge the referee made the following finding of fact and conclusion:

"From all of the evidence introduced in the support of this charge, I am convinced that a conspiracy to blackmail Pecor existed between Sandman, Mrs. Sandman, and Prudhomme. Facts sufficient to establish the fact of such conspiracy were brought out in the preliminary examination of Sandman upon the extortion charge in the municipal court, at which time Van Slyke represented Sandman as his attorney. The evidence in regard to some phases of the case is, however, very mystifying. The actions of Lyons are unexplainable excepting upon the hypothesis that he was in the conspiracy with Sandman, or from a hypothesis that he was attempting to "work" Pecor on his own account. The action of Van Slyke, after his interview with Assistant Attorney General Sickel, in going through the motions paying back the money received from Lyons in settlement, employing Goodman to appear in the case in place of Harkin, and then making the

settlement over again, is so seemingly childish as to be incomprehensible upon any rational theory."

"From the facts disclosed by the evidence in this case, I arrive at the conclusion that a deliberate attempt was made to blackmail Pecor; that the original conspirators were Sandman, his wife, and Prudhomme; that Van Slyke, after appearing as attorney for Sandman upon the preliminary hearing of the extortion charge, had knowledge of the fact that conspiracy to blackmail Pecor existed; and that, when Van Slyke brought the suit for Sandman against Pecor for alienation of affections and for criminal conversation, he was fully aware that no cause of action existed.

"I make the further conclusion that the settlement made by Pecor was obtained by coercion upon the part of Van Slyke in instituting the action for alienation of affections and for criminal conversation, and that in bringing this suit, in making the settlement with Pecor, and in the proceedings setting aside and subsequently reinstating the settlement, Van Slyke was guilty of unprofessional conduct and obtained money by the wrongful use of fear upon the part of Pecor, induced by the actions of Van Slyke."

[1]  The findings of the referee are to the effect that in the transactions on which the various charges are based the respondents—both respondents in the Cochrane case and Van Slyke in all—were collecting money from people where no legal ground for payment existed, and where they knew payment was being made to prevent exposure or criminal prosecution, and that such practice on the part of a lawyer amounts to unprofessional conduct; that, while no open threats of exposure or criminal prosecution were made by either of the respondents, the circumstances were such that a demand for payment contained an implied threat that exposure or prosecution would follow if payment were not made. We believe that the findings of fact are fully warranted by the evidence, and we agree with the referee that respondents have been guilty of unprofessional conduct. This leaves for the court the question only of determining the penalty that should be imposed.

As is said in Re Lentz, 65 N. J. Law 134, 46 Atl. 761, 50 L. R. A. 415, courts have two objects in view in disbarment proceedings:

"One, to compel the attorney to deal fairly * * * with his client; * * * the other to remove from the profession a person whose misconduct has proved him unfit to be instrusted with the duties and responsibilities belonging to the office of an attorney."

No client is complaining in this case; therefore we have only the latter object to deal with.

[2] Disbarment of an attorney is a very severe punishment. It not only humiliates him and disgraces him in the eyes of his friends and the profession, but it deprives him of his means of livelihood for himself and family. For these reasons disbarment should be resorted to only when the misconduct has been gross. Indeed, we might say that it should be resorted to only where the evidence and circumstances are such as to show that the respondent is so lacking in ability or character as to be wholly unfit to be intrusted with the interests of others. Furthermore, punishment of the respondent is not the object of disbarment proceedings; although to an attorney of any pride or self-respect, the mere filing of an accusation inflicts severe punishment, and in this case we know that, during the year and a half or more that these proceedings have been pending, respondents have felt the reproach of the charges very keenly, and have suffered a considerable loss of business as well.

[3] Respondents are both men of ability, and while they may, at times have failed to appreciate their duties and responsibilities as lawyers, the evidence does not show them to be so lacking in character or integrity as to merit either disbarment or suspension from practice. It is not at all likely that either of them will offend again, or that other attorneys, after the publication of this opinion, will be guilty of similar offenses. If they do, it will be accepted as evidence of their unfitness to act as attorneys at law, and disbarment will follow. In this case no other penalty will be imposed than that of reprimand, which is hereby pronounced, and the payment of the costs of this proceeding. As there is no way of arriving at an exact apportionment of the costs between respondents, the costs will be approximated, and

Bartlett will be required to pay one-eighth of the entire cost and Van Slyke the other seven-eighths.

It will be so ordered.

Note.—Reported in 197 N. W. 285. See, Headnote, American Key-Numbered Digest, (1) Attorney and client, Key-No. 45, 6 C. J. Sec. 58; (2) Attorney and client, Key-No. 58, 6 C. J. Sec. 93; (3) Attorney and client, Key-No. 58, 6 C. J. Sec. 93.