MEYLINK, Appellant v. MINNEHAHA COOPERATIVE OIL CO., Respondent

(283 N. W. 161.)

(File No. 8119. Opinion filed December 30, 1938.)

*Henry C. Mundt,* of Sioux Falls, for Appellant.

*Blaine Simons,* of Sioux Falls, for Respondent.

SMITH, J. Plaintiff alleged that defendant had coerced him into paying defendant the sum of one thousand dollars by threatening to prosecute plaintiff's son for embezzlement. The issues made up by these allegations and defendant's denials were submitted to a jury. The verdict was for plaintiff. Thereafter the court entered judgment for defendant notwithstanding the verdict, upon grounds which had been urged by defendant in a motion for a directed verdict made at the conclusion of the testimony. The appeal of the plaintiff requires us to review the evidence in order

that we may determine whether the court was warranted in so entering judgment.

▮ Upon such a record this court views the evidence in the light most favorable to plaintiff, and after the evidence is so reviewed, it must appear that there is some substantial (more than "a mere scintilla"), credible evidence in support of the verdict of the jury in order to require a reversal. Marshall et al. v. H. P. T. M., M. & M. Co. et al., 1 S. D. 350, 47 N. W. 290; Lyle v. Barnes, 30 S. D. 647, 139 N. W. 338; Wolff v. Stenger, 59 S. D. 231, 239 N. W. 181.

Plaintiff was president and general manager of defendant company on and prior to April 22, 1933. His married son was in the employ of defendant, and had furnished it a fidelity bond in the sum of one thousand dollars. Around noon of that day, other officers and agents of defendant procured a written confession from the son in which he stated that he had misappropriated $2,-350 of the company's funds. Within a short time after signing the confession, the son went to the home of plaintiff and told the father and mother that he had been accused of taking a large sum of money from the company. An attorney (not an attorney of record in this cause) was on the board of directors of the defendant. Shortly after the son arrived at plaintiff's home, plaintiff called this attorney-director and asked him to come to the home of plaintiff. Two or three of the company's other agents and employees accompanied the attorney to plaintiff's home. Plaintiff and his wife testified that while there the attorney said he had a confession from the son as above described, and that they had better make settlement for the amount taken. He further said that a criminal offense was involved, and if the surety company "gets hold of it, you know what that means, it is a penitentiary offense." He further said 'that if we did not raise the money they would have to prosecute Bob." During this conference the confession was handed to plaintiff, certain slips were exhibited, and it was said "Yes, and we have the proof of it right here." Plaintiff, his wife, and son, were in tears and were much disturbed throughout the conference and when the agents of the company left.

The foregoing conference was on Saturday. A board of directors meeting of the company was held at about 8:00 P. M. on Wednesday, April 26, 1933. According to the testimony of plain-

tiff, it was said at this meeting that the son had taken $2,350 in money and plaintiff was asked to make a settlement for that amount. After plaintiff had said that he did not have the money, request was made that he retire from the room. When he returned, according to plaintiff, they said that if he would go to the surety company and collect a thousand dollars on the bond they would settle. Otherwise they would have to prosecute the son. Plaintiff further testified that the attorney said, during the board meeting, "this was a criminal offense, he knew about it because he had been state's attorney and knew that it was a criminal offense, and was subject to a penitentiary offense." Witnesses for defendant testified that plaintiff was considerably agitated, worried and disturbed during this meeting.

On the next day plaintiff went to the home office of the surety company and made arrangements for it to pay one thousand dollars to defendant. Plaintiff borrowed five hundred dollars on his life insurance and gave the surety his note for the remaining five hundred dollars. Plaintiff testified that he supposed the payment was made to defendant immediately. In fact, payment was not made until May 4th.

An officer of the surety testified that the payment was made by direction of plaintiff, and that he told the attorney-director of defendant of the arrangements made with plaintiff. The same witness stated that proof of loss and release was taken from defendant at the time payment was made, and that no investigation of the amount of the loss was made by the surety.

Plaintiff's wife testified that plaintiff went to the office during the period in question, but described his condition as follows: "When Mr. Meylink came back from the Board of Directors meeting on April 22, 1937 (sic) he was decidedly beside himself. Mr. Meylink didn't eat. He couldn't sleep and he wouldn't talk. He just sat around most of the time * * *. He would wander around all by himself. I also noticed extreme depression and nervousness and he was not normal, not the least bit, nothing whatever, just worry." The officer of the surety company stated "Mr. Meylink was very nervous and upset when he came to see me."

Plaintiff testified that he would not have caused the payment to have been made had it not been for the threats.

Although plaintiff made repeated efforts to induce defendant to make repayment for the reason that the son was not actually short in his accounts, this action was not started until December, 1936.

The evidence of defendant admits the several conferences and the concern and nervousness of plaintiff, but conflicts with the evidence of plaintiff in many respects, and it is emphatically denied that any threats were made or that any attempts were made to collect the money from plaintiff.

The motion for directed verdict and for judgment n.o.v. urged three reasons warranting a withdrawal of the case from the jury. It was urged:

"1. * * * that there was no evidence competent or otherwise, to prove * * * that the plaintiff, John Meylink, was in any way threatened by defendant, or that he was coerced * * * to the point of losing his free will, * * *.

"2. * * * there is no evidence that the * * * Surety Company paid the said claim upon the solicitation, request, or demand of the plaintiff, * * *.

"3. * * * that the plaintiff had ample time for investigation, consultation and advice after the alleged threats were made to satisfy himself whether any shortages in fact existed, * * * and after any menace or coercion exerted by the defendant's agents were removed * * *."

▉▉▉ That settlements or contracts made under the coercive influence of threats of arrest and imprisonment will be set aside, is the established law of this and other jurisdictions. Cochrane v. Nelson et al., 45 S. D. 609, 189 N. W. 700; Daum v. Urquhart, 61 S. D. 431, 249 N. W. 738; 17 Am. Jur. 886. It logically follows that a payment procured from a parent by threatening arrest and imprisonment of his child may be recovered if the fear induced by such threats did in fact operate as the coercive cause of the payment by overcoming the will and free agency of the parent. 17 Am. Jur. 897; 48 C. J. 749, 750.

▉▉▉ The burden of respondent's argument here deals with the third ground of its motion. We are told that the circumstances, including the lapse of time and the opportunity for reflection and consultation, as disclosed by plaintiff's evidence, estab-

lished as a matter of law that the payment was voluntary. That this contention is supported by respected authority we must admit. Cf. Wolff v. Bluhm et al., 95 Wis. 257; 70 N. W. 73, 60 Am. St. Rep. 115; 13 C. J. 397, note 43. That the circumstances of a particular case, including an extreme lapse of time between threat and action, might be such as to render it entirely reasonable for a court to determine as a matter of law that the questioned act was the result of a judgment formed by a free and uncontrolled mind, must also be conceded. However, a rule which denies all possibility of coercion whenever there has been time for consultation and reflection, no matter how short the time, and notwithstanding the fact that no disinterested advice had in reality been had, in many instances will lead to results unsupported by actual facts, and is founded upon assumptions that human experience does not sustain. Modern doctrine measures the reaction of the particular individual involved to the threat made. 17 Am. Jur. 884. Such a threat made to a certain type of parent would be more apt to gain than lose in potential with the passage of a few cruel days of contemplation. It therefore seems more logical and more in accordance with realities to hold that these are but circumstances of the particular case to be considered by the triers of the fact in arriving at a determination as to whether the claimant was in fact bereft of free agency. Restatement of the Law of Contracts, § 492, comment (c).

█ In the instant case the jury could have believed that the threat was made on the 22nd day of April, that it was renewed on the evening of the 26th, and that arrangements for payment were concluded during the next morning, and that plaintiff believed the payment to have been made forthwith, although it was not in fact made until May 4th. Here was no such extreme showing of lapse of time or of opportunity for reflection and consultation as would permit a court to deal with the issue as a matter of law. Quinn et al. v. United States F. & G. Co., 163 Minn. 320, 204 N. W. 156; Eureka Bank v. Bay et al., 90 Kan. 506, 135 P. 584; Coon v. Metzler, 161 Wis. 328, 154 N. W. 377, L. R. A. 1916 B, 667; Tiffany & Co. v. Spreckels et al., 202 Cal. 778, 262 P. 742; Port of Nehalem v. Nicholson, 122 Or. 523, 259 P. 900; Meyer v. Guardian Trust Co., 8 Cir., 296 F. 789, 35 A. L. R. 856; Guardian Trust Co. v. Meyer, 8 Cir., 19 F. 2d 186; Union

Nat. Bank of Greeley v. Wright et al., 79 Colo. 574, 247 P. 453; Brown County Bank v. Hage, 156 Minn. 460, 195 N. W. 275; Restatement of the Law of Contracts, supra.

 That the evidence was sufficient,. if believed, to support the triers of the fact in determining that threats of arrest and imprisonment of the son were made to the father, and that the payments were made by the surety at the instance and on behalf of the father, is obvious. Unless reasonable men could reach no other conclusion, a court should not disregard evidence as incredible and false. Although some of plaintiff's testimony places a very severe strain on credulity, we cannot say that it was unreasonable for a jury with full opportunity to observe the demeanor of all of the witnesses to accept plaintiff's evidence as true.

It follows that we are of the opinion that the learned trial court erred in entering a judgment notwithstanding the verdict. The judgment is reversed, and the trial court is instructed to reinstate the verdict of the jury.

ROBERTS, P. J., and RUDOLPH and WARREN, JJ., concur.

POLLEY, J., dissents.