MADSEN, Appellent v. WATERTOWN BOTTLING COMPANY et al., Respondents

(59 N. W.2d 735)

(File No. 9297. Opinion filed August 12, 1953)
Rehearing denied September 15, 1953

**Hanten & Henrikson,** Watertown, for Appellant.

**Stover & Beardsley,** Watertown, **Claude A. Hamilton,** Sioux Falls, for Respondents.

SMITH, J.   Whether the trial court erred in entering judgment n. o. v. in favor of the defendants is the problem presented by this appeal.

On the 14th of September 1950 at about 8:30 in the evening, at a point on U. S. Highway 81, in Hamlin county just north of Kone's corner, plaintiff's southbound car came into collision with the northbound truck of the Watertown Bottling Company, driven by Alfred E. Kettenbeil.   Plaintiff's left arm was torn or sheared off, and his car was demolished. The impact occurred south of the crest of a small hill. Plaintiff is without memory of events from the time just before he reached the crest of the hill until a matter of moments after the collision.   The drivers were alone and no other persons witnessed the collision.   The driver of the truck testified that he was traveling at the rate of about 40 miles per hour on his proper side of the highway; that as he approached the crest of the hill he could see the reflection of the lights of plaintiff's car; but that when it appeared over the hill it was coming at him and he had no time to avoid the accident.   Predicated upon testimony we shall outline, plaintiff contends the evidence offers substantial support for a finding that his southbound car was traveling on the west side of the highway at the time of the impact, and therefore his injuries were proximately caused by the negligence of defendant Kettenbeil in driving on that side of the highway. The trial court concluded that plaintiff had failed to evidence any negligence on the part of the defendants, and ordered judgment n. o. v. for defendants.

Plaintiff was driving a 1936 Ford Fordor. Defendant Kettenbeil was driving a Dodge truck which had been designed with a panel box and shelves for transporting cases of bottled soft drinks.   This panel box extended out beyond the cab about on line with the fenders.   The impact on the truck was chiefly at the front left-hand corner of the panel box, but there were markings about six inches in on the front bumper and along the front fender evidencing contact

at these points. The left front wheel of plaintiff's car was broken off and much of the left side of the body was sheared and crushed. It was a total wreck. Plaintiff testified that he was traveling 35 or 40 miles per hour. He did not fix his position on the highway except to say he was traveling on the west side of the highway as he left Watertown. The defendant testified that he was driving in the east half of the highway and he said the collision occurred just south of the crest of the hill. The truck traveled some distance and came to rest on the east shoulder of the highway. Defendant said its drive shaft was broken by the impact and therefore its emergency brake would not function. The plaintiff's car came to rest on the east side of the highway more than 150 feet south of the point of impact fixed by defendant. Whether plaintiff got out of his car or was thrown therefrom is not known. The first person to arrive at the scene of the accident came from the south. As he approached he said he could see plaintiff either rolling or stumbling on the west surface of the highway. When he reached plaintiff he found him on his back with his feet to the west. Plaintiff's left arm which had been severed was a short distance to the west and north from him. He was a short distance north and west of the rear of his car.

Three peace officers, the sheriff of Hamlin county, the chief of police of Watertown, and a member of the police force of Watertown, collaborated in an investigation of the physical facts. They each testified at the trial with reference to their observations. Their investigation brought to light tire tracks made by the rear tires of plaintiff's car. They were easy to identify because of a special tread. According to the chief of polcie, and his assistant, those tracks started some inches east of the center line, a short distance south of the crest of the hill. The chief described their course from that point in these words, "The rear end of the automobile * * * slid to the west and then proceeded on south." The sheriff of Hamlin county, however, testified that these tire marks started slightly west of the center line. He said, "They start from the—kind of beyond the center line on the west side and then made a curve down towards the west side, and then came back". These investigators described three

marks in the blacktop surface south of the crest of the hill and about opposite the beginning of the above described tire marks. The first of these marks to the north was a gouged circular mark about ten to twelve inches in diameter. This mark was about sixteen inches east of the center line. Several feet south and just on the east edge of the white center line, and again several feet south of that point, and several inches east of the center line, the investigators found where some sharp edge had cut respective straight lines two or three feet long. The point of beginning of the tire marks is somewhere between these cut marks. All of these investigators said they found nothing on the truck which could have made the described marks. They also agreed that they could have been made by the brake drum of plaintiff's car which remained after the left front wheel had broken off. When plaintiff's car came to rest, this brake drum rested on the pavement. Although the car had traveled about 150 feet south of the described marks, no other marks appeared on the surface of the highway.

The sheriff of Hamlin county gives a description of the scene of the accident as he approached it from the south. He said, "Well, first when I arrived, we hit the ambulance where they were loading Lloyd Madsen, and then we hit the car next and then the puddle of blood right behind the car, and then we went up the road a little ways and found parts of the car, and up to the point of collision, dirt stood across the road and farther north down below a hill there we found the truck driven by Kettenbeil."

The argument of the plaintiff is that the jury was privileged to believe the testimony of the sheriff of Hamlin county that the marks made by the tires of plaintiffs' car were west of the center line at all times, and to infer therefrom that the collision occurred in the west half of the highway and hence was caused by the negligence of defendant.

■ ■ In reviewing a record where the trial court had entered a judgment n. o. v. in favor of a defendant, we said, "Upon such a record this court views the evidence in the light most favorable to plaintiff, and after the evidence is so reviewed, it must appear that there is some substantial (more than 'a mere scintilla'), credible evidence in support of the

verdict of the jury in order to require a reversal." Meylink v. Minnehaha Co-op. Oil Co., 66 S.D. 351, 283 N.W. 161, 162.

■ ■ It is elementary that the burden was on plaintiff to show that negligence of defendants was the proximate cause of his injuries. It is also settled that "* * * in order that a theory be established by circumstantial evidence, the facts and circumstances shown must not only be consistent with such theory, but inconsistent with any other rational theory." Erickson v. Todd, 62 S.D. 280, 284, 252 N.W. 879, 881.

There is no direct evidence that defendant's conduct caused plaintiff's injuries. The verdict is without substantial support in the evidence unless it can be said that the facts and circumstances are not only consistent with the theory that plaintiff's injuries were proximately caused by defendant's negligence but are inconsistent with any other rational theory. Pointing (1) to the testimony of the sheriff of Hamlin county that the marks made by the rear tires of his car were west of the center line, (2) to the position of plaintiff and of his arm when discovered after the collision, and (3) to the fact that his car traveled down the road for a distance of over 150 feet from the cut marks which appeared just east of the center line, without making any like marks in the pavement, plaintiff asserts the jury was warranted in believing that (1) the cut marks were not made by his car, (2) the collision occurred at same undetermined point west of the center line, and (3) Kettenbeil's negligence in driving on the wrong side of the highway was the proximate cause of plaintiff's injuries.

The infirmity in this argument, as we see it, is that the physical facts and circumstances render it equally as probable that the left front wheel of plaintiff's car was on the east side of the center line at the moment of the collision and hence that the cause of the impact was the conduct of the plaintiff.

Accepting the testimony of the sheriff of Hamlin county as true, it seems most probable that the collision occurred just south of the crest of the hill where the cuts appear east of the center line, and marks were made by the rear tires of plaintiff's car just west of that line. The debris which was

scattered along the west side of the road between that point and where plaintiff's car came to rest bears out that theory. We cannot say that it would have been impossible for the left front end of plaintiff's car to be held off from the ground as it whirled to the west and back to the center of the highway during the 150 feet it continued to the south. It can be said that it is more probable that the cuts in the pavement were made as the left front of plaintiff's car was smashed and sheared than that they were made by the truck. The investigators all agreed that they could find nothing on the truck which could have made the marks in question.

The accepted facts and circumstances being as consistent with the theory that plaintiff's conduct caused the collision as that it was caused by defendant, Kettenbeil, it follows that plaintiff has failed to establish his case. Lunde v. Dwyer, 74 S.D. 559, 56 N.W.2d 772 and Anderson v. Dunn, 68 S.D. 479, 4 N.W.2d 810.

·The judgment of the trial court is affirmed.
All the Judges concur.