BURKLAND, Respondent, v. BLISS, et al, Appellants.

(252 N. W. 25.)

(File No. 7431. Opinion filed December 19, 1933.)

*W. A. Bauman* and *Gunderson & Gunderson,* all of Vermillion, and *Danforth & Davenport,* of Sioux Falls, for ,Appellants.

*Alan Bogue,* of Parker, and *Norman Jaquith,* of Wakonda, for Respondent.

ROBERTS, J. Plaintiff instituted this action for the recovery of damages against William Bliss, Henry A. Walz, and the sureties

on their official bonds and against Carl Viers. After reciting the election and the qualification of defendant Viers, as mayor of the city of Vermillion, the appointment and qualification of defendants Bliss and Walz, as police officers of that city, and the execution and delivery of official bonds by the police officers, the complaint alleges that Policeman Walz, while acting under the direction and with the knowledge and consent of the officers of the city of Vermillion and particularly with the consent of the defendant Viers, armed himself with a tear gas gun; that "Henry A. Walz while acting within the scope of his duties and employment entered the Clay County Oil Company's Garage at Vermillion, South Dakota, where the plaintiff was conversing with several other persons, and told plaintiff he wanted him to go with him to the jail at the court house in Vermillion, whereupon the plaintiff asked if he had a warrant for his arrest, and he said he did not, but that he wanted the plaintiff to go with him, and said to the plaintiff, 'I have a good notion to shoot you with this gas gun,' and immediately thereafter he carelessly, maliciously shot the plaintiff in the face with said tear gas gun, causing him to fall to the floor and rendering him unconscious"; that the plaintiff was taken to the jail in the Clay county courthouse by Walz and was confined therein from 10 o'clock in the forenoon until 9:30 o'clock in the evening of the same day; that defendant Viers "knew of the said arrest without a warrant, and knew that the said police officer had used a tear gas gun in making said arrest, and had shot the plaintiff with the same * * * but nothwithstanding his knowledge of plaintiff's injuries and the extent thereof and the method and manner by which he had been injured, he permitted the plaintiff to be confined in said jail and to remain confined in said jail from ten o'clock in the forenoon until 9:30 in the evening, * * * without proper medical treatment"; that Viers "while mayor of the said city of Vermillion instructed defendant, Henry A. Walz * * * to arrest the plantiff and the said Walz did arrest the plaintiff at the request of said Carl Viers without a warrant having been issued for his arrest, and was acting within the scope of his authority as a police officer of said city when he made said arrest"; that the defendant Bliss from about 1 o'clock in the forenoon of the day of the arrest "knew of the condition of the plaintiff," but notwithstanding such knowledge "kept and retained said plaintiff in jail during said afternoon

and until about 9:30 o'clock in the evening and prevented anyone else from aiding and assisting the plaintiff"; and that the plaintiff had not committed any offense under the ordinances of the city of Vermillion or under the law of the state of South Dakota at the time of his arrest or prior thereto. There are also the general allegations that defendants "caused the plaintiff to be unlawfully, maliciously and falsely imprisoned," and that the arrest and false imprisonment were unlawful, without probable cause, and the result of actual malice. Actual and punitive damages are demanded. The separate demurrers of the defendants were overruled, and the appeal is from the order overruling such demurrers.

 Counsel for the defendants insist that in the complaint two or more causes of action have been improperly united. The action of false imprisonment always includes at least the element of an assault in the technical sense. 25 C. J. 454. "Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." 11 R. C. L. 793. "Such restraint can be accomplished only by some act or conduct equivalent to assault, actual or constructive." Cullen v. Dickinson, 33 S. D. 27, 144 N. W. 656, 657, 50 L. R. A. (N. S.) 987, Ann. Cas. 1916B, 115. If the restraint is combined with an assault with a dangerous weapon or with assault and battery, it does not change the character of the action. The alleged use of the tear gas gun is an element of damage, but does not state a separate cause of action.

██ ██ It is also claimed by the appellants that the complaint alleges the commission of three different torts, and not a single false imprisonment by the defendants as joint tort-feasors. All persons who take part in or assist or abet in the commission of false imprisonment are joint tort-feasors and this without regard to whether a conspiracy had been entered into. Culver v. Burnside, 43 S. D. 398, 179 N. W. 490. The complaint does not allege that defendant Viers was an active participant, but pleads that Walz arrested plaintiff at the request of Viers without a warrant having been issued. The fact that defendant Bliss was not present when the arrest was made, or that he did not counsel or procure the arrest, furnishes no reason for holding that he cannot be joined as a party defendant. A review of the decisions leads us to con-

clude that his subsequent participation in the tort as alleged in the complaint would render him jointly liable with the other two defendants. 25 C. J. 497.

Appellants cite Northern Finance. Corporation v. Midwest Commercial Credit Co., 59 S. D. 282, 239 N. W. 242, to sustain their contention that under the allegations of the complaint they are not joint tort-feasors. That was an action brought against successive purchasers of mortgaged property wrongfully sold by the mortgagor. The converters were not united in a common purpose, and it could not be said that the second converter became a participant in the original sale. It is not such a case as this where wrongdoers became participants to one continuous trespass.

The remaining inquiry is whether the sureties can be held liable for the alleged injuries sustained by the plaintiff. It is urged by the sureties that the bonds upon which plaintiff's action against them is predicated were given for the benefit and protection of the city, and that an action cannot be maintained thereon by a stranger to the contracts such as an individual member of the public to recover damages for injuries sustained by him by the wrongful act of the officers. The principals named in the bonds were appointive officers, and the statute requiring bonds to be given by such officers expressly provides that they shall be conditioned for the faithful discharge of the duties of their offices and to account, pay over, and deliver all money or other property coming into their hands by virtue of their offices. Sections 6269 and 6272, Rev. Code 1919. The bonds were made payable to the city of Vermillion, and each bond, among other conditions, required from the principal faithful performance of his duties. There is no express provision of statute that such bond shall be for the benefit of third persons.

Respondent contends that the rule announced in Hollister v. Hubbard, 11 S. D. 461, 78 N. W. 949, is controlling in the instant case. This case involved the right of an individual to maintain an action on the bond of a sheriff for the faithful performance of his official duties. It is there pointed out that, while the official bond of a sheriff is required to be "given to the county, as a mere matter of expediency, it is designed to protect the public, whose servant he is, and indemnify each person that may be injured by his default or misconduct in office," and hence an action, being maintainable in the name of the real party in interest under an

express statutory provision, may be brought in the name of the injured party. Again, in the case of Guernsey v. Tuthill, 12 S. D. 584, 82 N. W. 190, the same question of the right of a third person to bring an action upon a sheriff's bond was presented, and the rule in the Hollister Case was reaffirmed. This view finds support in the following adjudications: Scott v. Feilschmidt, 191 Iowa, 347, 182 N. W. 382; City of Cairo v. Sheehan, 173 Ill. App. 464; People v. Morgan, 188 Ill. App. 250; Town of Lester v. Trail, 85 W. Va. 386, 101 S. E. 732; State v. U. S. Fidelity & Guaranty Co., 85 W. Va. 720, 102 S. E. 683. There is, however, a conflict in the decisions, and the following cases support a contrary rule: Carr v. City of Knoxville, 144 Tenn. 483, 234 S. W. 328, 19 A. L. R. 69; Eaton Rapids v. Stump, 127 Mich. 1, 86 N. W. 438, 89 Am. St. Rep. 451; United States Fidelity & Guaranty Co. v. Jasper, 56 Tex. Civ. App. 236, 120 S. W. 1145; United States Fidelity & Guaranty Co. v. Crittenden, 62 Tex. Civ. App. 283, 131 S. W. 232; Alexander v. Ison, 107 Ga. 745, 33 S. E. 657. The right of an individual to maintain an action on the bond of a peace officer given to a city is not distinguishable in principle from an action upon a bond of a sheriff wherein the county is named as obligee.

■■ A distinction has been drawn in some cases between acts done virtute officii for which an officer's sureties are liable and those done colore officii for which they are not. Taylor v. Shields, 183 Ky. 669, 210 S. W. 168, and cases collected in 3 A. L. R. 1623. We believe that the better rule and supported by the weight of authority is that wrongful acts of a public officer, colore officii, are official acts for which sureties upon his official bond are liable. It is conceded that there was no authority for an arrest without a warrant under the facts alleged in the complaint. Defendants' sureties contend, however, that the wrongful act was committed in individual capacities; that to constitute color of office so as to render sureties liable for a wrongful act something other must be shown than the fact that the officer claimed to be acting in an official capacity. In Lee v. Charmley, 20 N. D. 570, 129 N. W. 448, 450, 33 L. R. A. (N. S.) 275, it was held that a deputy sheriff, who without a warrant went at night to the house of a person not formally charged with crime and under guise of the authority of his office arrests and takes such person into custody, committed an unlawful act under color of his office for which sureties upon

his official bond were liable. The court, in considering the contention that an unlawful arrest by an officer without a warrant does not constitute an act under color of office, said: "This contention has apparent support in many cases which seem to predicate color of office wholly upon the fact that the officer was armed with a warrant or some process of that character directing him to do some official act; and, this being the case, the fact that the unlawful act complained of was committed against the person or property of a party not named in the writ did not deprive it of the 'color' requisite to its official character. Lammon v. Feusler [111 U. S. 17, 4 S. Ct. 286, 28 L. Ed. 337], supra, and cases cited therein. Distinctions such as this, however, seem to us to be fanciful refinements rather than substantial reasoning. It is true that Charmley as deputy sheriff was authorized to make an arrest at night without a warrant only in case he had reasonable cause to believe that the person arrested had committed a felony. Rev. Codes 1905, § 9733. It is also true that the complaint expressly negatives any such authority by the statement that at the time of the arrest the man arrested had not committed any crime, and that his arrest was made 'without reasonable cause or authority of law.' Yet it appears that Charmley went to Brown's house, demeaning himself as an officer, claiming that he had authority for making an arrest, and made the arrest, and compelled Brown to accompany him in this official character. In such character he was authorized to make the arrest if provided with a warrant, or without in case he had reasonable cause for believing that Brown had committed a felony. He pretended to have such authority, and intimiated, as we may presume, by such pretense, Brown without resistance submitted to arrest and to being held in custody. Charmley's official insignia was the means by which he was enabled to accomplish the wrongful act."

See, also, People v. Morgan, supra; Yount v. Carney, 91 Iowa, 559, 60 N. W. 114; Gomez v. Scanlan, 155 Cal. 528, 102 P. 12; Turner v. Sisson, 137 Mass. 191.

The alleged wrongful act was committed under color of office, and constitutes a breach of the condition of the bonds. The action of the trial court in overruling the demurrers was proper, and the order appealed from is affirmed.

All the Judges concur.