## ANDERSON et al. v. SAGER.
### No. 13834.

United States Court of Appeals
Eighth Circuit.
April 1, 1949.

Sigurd Anderson, Atty. Gen., E. D. Barron, Asst. Atty. Gen. State of South Dakota (Earl V. Morrill, of Sturgis, S. D., on the brief), for appellants.

H. F. Fellows, Geo. A. Bangs and W. A. McCullen, all of Rapid City, S. D., for appellee.

Before GARDNER, Chief Judge, and RIDDICK and STONE, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal from a judgment in an action for damages for an alleged false arrest and imprisonment. In her complaint appellee charged that she had suffered actual damages in the sum of $10,000 and was entitled to exemplary damages in the sum of $5,000. Jurisdiction is based upon diversity of citizenship. The trial court withdrew from the jury the question of exemplary damages, ruled that the arrest and detention of appellee were unlawful, and directed the jury to determine from the evidence her actual damage, if any.

Appellant Anderson is the sheriff of Meade County, South Dakota. The other appellants are police officers of Meade County and of the State of South Dakota.

On November 8, 1947, Anderson, acting after consultation with the State's Attorney of Meade County, called to his aid the other appellants for the purpose of making a raid on the North Star Night Club, then being operated in the village of Black Hawk in Meade County, about 21 miles distant from Sturgis, the county seat. At about 11 o'clock on the night of November 8, the appellants, armed with a search warrant, went to the North Star Night Club and proceeded to search it.

The law of South Dakota denounces as a common nuisance the keeping or operation of any establishment in which alcoholic beverages are sold, consumed, or given away in violation of the laws of the State, and any place in which gambling in any form is permitted. Those who keep or maintain or participate in keeping or maintaining places of the character described are guilty of misdemeanors. Section 1, chapter 15, of the Session Laws of 1939, as amended in 1943, Laws 1943, c. 13, § 1; section 24.9903 of the South Dakota Code 1939. Section 13.0203 of the South Dakota Code of 1939 provides that all persons concerned in the commission of a crime, whether it be a felony or a misdemeanor, or whether they directly commit the act constituting the offense or aid or abet in its commission, are principals.

Without going into a detailed statement of the facts revealed by the search made by the appellants, it is sufficient to say that the evidence discloses without dispute that the North Star Night Club was a common nuisance denounced by South Dakota law, and that the operators and those who aided or abetted them in violations of the liquor and gambling laws were guilty of misdemeanors.

Section 34.1609 of the South Dakota Code of 1939 provides that a peace officer may, without a warrant, arrest a person for a public offense committed or attempted in his presence. On the night of the raid and arrest out of which this action arises, the peace officers were without warrants for the arrest of any persons in connection with the operation of the North Star Night Club. Nevertheless, after having found that the club was being operated in violation of the statutes of the State, the sheriff directed the arrest of the proprietors of the club and all employees on the premises at the time of the raid. After the arrest of two proprietors who were present, the sheriff obtained from one of them a list of the employees. One of the police officers assisting in the raid found the appellee

working in the kitchen. The club was a large building, including, besides the kitchen, a dining and ballroom capable of accommodating 200 guests, a bar, a gambling room in the basement, and a storeroom in which supplies for the kitchen, the dining room, and the bar were kept. Appellee's name was on the list of employees of the club.

The North Star Night Club began operations the latter part of September 1947. Appellee is the wife of a soldier who had for some time prior to her arrest been stationed at an army airbase near the club. She was a frequent visitor to the club. She testified that she had been a guest of the club as many as 25 times during its operation. She was a friend of the wife of one of the proprietors, and on several occassions had worked in the kitchen when the club was short of help.

On the night of appellee's arrest, she had come to the club on the invitation of the wife of one of the proprietors. They reached the club about 7:15 in the evening and had dinner. While they were in the dining room, one of the proprietors of the club asked the appellee if she would help in the kitchen. Her testimony is that she agreed to do so as a friend of the proprietor and his wife. She went into the kitchen about 8 o'clock and remained there until her arrest about 1 o'clock the next morning. She testified that she had no part in the management of the club and no financial interest in it. The arresting officers saw nothing at the time of the arrest to indicate that she sold or served intoxicating beverages or in any way participated in any law violation. She was engaged in washing dishes and in peeling potatoes. She was so engaged when accosted by one of the appellants and when told that she was under arrest. This was the extent of her connection with the operation of the club so far as known to appellants at the time of her arrest.

After the arrests, the sheriff took the proprietors in his car to the courthouse at Sturgis and directed the employees to follow. Appellee and other employees did so in a car owned by one of the employees. On arrival at the courthouse they were taken before a magistrate. Appellee was released on bond furnished by the wife of one of the proprietors. She was detained at the courthouse about 30 minutes and returned to her home about 4 o'clock in the morning. On November 12, 1947, an information, sworn to by appellant Anderson, was filed in court, charging the appellee and other employees of the club with the crime of aiding and assisting in maintaining a common liquor nuisance. At a preliminary hearing on November 14, 1947, appellee was discharged by the committing magistrate.

The court charged the jury that the fact that the officers raiding the club had a search warrant which authorized them to search the premises did not authorize them to arrest without a warrant any person on the premises, unless they saw the person arrested committing an offense. The jury was told as a matter of law that the appellee on the evidence was not committing any offense, and that there was no evidence to show that any of the officers saw her violate in any way any law of the State of South Dakota; that the mere fact that she was employed in the night club in the capacity shown by the evidence would not justify her arrest without a warrant on the ground that she was aiding or abetting or in any way participating in the law violations of which the operators and proprietors of the club were guilty. This statement of the law is approved in Lambert v. United States, 9 Cir., 26 F.2d 773, 774. There are no South Dakota decisions to the contrary cited by appellants.

Appellants' objection to the charge is that the facts and circumstances revealed by the evidence and known to the appellants at the time of appellee's arrest were sufficient to give appellants reasonable grounds to believe appellee guilty of aiding and abetting in the crime of maintaining a common nuisance. The argument is that the correct rule of law is that an offense is committed in the presence of an officer, justifying arrest without a warrant, when the facts and circumstances occurring within his observation at the time of the arrest give him probable cause to believe that the person arrested is committing the offense for which the arrest is made.

We may concede, as appellants contend, that duly authorized peace officers may make an arrest for a misdemeanor without a warrant when they have reasonable cause to believe the misdemeanor is being committed in their presence. This is the holding of this court in a number of cases. In Garske v. United States, 8 Cir., 1 F.2d 620, 622, the rule is said to be established throughout the United States. See also Peru v. United States, 8 Cir., 4 F.2d 881, 882; Catagrone v. United States, 8 Cir., 63 F.2d 931, 932, 933, citing the Garske case and other decisions of this court to the same effect. But the cases cited are also authority for the rule that the probable cause which will justify arrest for misdemeanor without a warrant must be a judgment based on personal knowledge acquired through the senses at the time of the arrest, or based on inferences properly to be drawn from the testimony of the senses. Mere suspicion is not enough to justify an arrest for a misdemeanor without a warrant. And the subsequent discovery that a suspicion was in fact well founded is not sufficient to establish the probable cause requisite to the validity of the arrest at the time the arrest was made.

It seems clear that under the rule stated the appellants were without probable cause for believing that the appellee was committing in their presence the offense for which she was arrested and charged. All that the officers knew at the time of appellee's arrest was that she was working in the kitchen of a club which not only served dinners to guests, but also operated a bar and a gambling room in violation of the law, although they may have believed that she knew that her employers were engaged in the unlawful sale of liquor or in violation of the law against gambling. See Lambert v. United States, supra.

Nothing that the officers saw at the time of the arrest tended to indicate that the appellee had any part in the illegal serving or dispensing of intoxicating liquors or in operating the gambling room or the bar in the ballroom. The gambling room was located in the basement and its door was locked at the time of the raid. The bar was separate from the kitchen. The appellee, so far as the officers knew, or had the right to believe or to suspect, at the time of her arrest, was engaged exclusively in work in the kitchen in the menial tasks of washing dishes and peeling potatoes. The facts brought out at the trial that appellee was an habitue of the club and an occasional employee in the kitchen, and that she was closely acquainted with the proprietors and an associate and friend of the wife of one of the proprietors, were not, so far as this record goes, known to the officers at the time of the arrest, and therefore no evidence to support the claim of probable cause for the belief on their part at the time of the arrest that appellee was guilty of any law violation.

Appellants carried the burden of justifying the arrest. Raymond v. Corrigan, 37 S.D. 609, 159 N.W. 131, 132. There was no evidence of probable cause to justify the arrest. The court was correct in refusing to submit the question to the jury.

Appellants assign error in the refusal of the court to permit appellee to answer certain questions on cross examination. Appellee was asked whether on her visits to the club she had observed the conduct of the people around the place, whether on the night of the raid she had occasion to see liquor consumed by the guests, whether her husband was a proprietor of or interested in the club on the night of the raid, whether she had ever been down in the basement of the club, and whether she knew there was any gambling equipment in the basement. Error is also assigned to the court's refusal to permit appellants to prove by the testimony of appellant Anderson that the North Star Night Club was at the time of the raid a public nuisance, operated and maintained in violation of law. Appellants' position is that they were entitled to show all the conditions and circumstances existing at the North Star Night Club and the knowledge of the appellee concerning them in mitigation of damages.

There was no error in the court's refusal to permit the sheriff to testify that in his opinion the night club was being operated as a public nuisance. The sheriff and others of the appellants had testified in detail as to the facts discovered on the raid,

798

and the court in its charge told the jury that: "Undoubtedly, under the evidence in this case, there were certain people there who were engaged in the unlawful acts which made that night club a public nuisance." The question was one of law for the court and not for the witness Anderson.

■■ Nor was there any error in the court's rulings on the questions asked the appellee on cross examination. If appellee had answered all the questions in the affirmative, her testimony would not have been admissible on the question of probable cause at the time of her arrest. The record does not indicate that the court was asked to permit the reception of the evidence on the question of damages; but rather that it was to be received, as was all the other evidence heard by the jury concerning the appellee's acquaintance with the proprietors of the club and her familiarity with its operation, on the question of probable cause justifying her arrest at the time it was made. And the answers to the questions, if in the affirmative, would have added nothing to the information before the jury from other evidence which the court received concerning the club's violation of law and appellee's familiarity with the club and its operation. The jury knew from this other evidence that the appellee was familiar with what went on at the North Star Night Club. The court charged the jury not only that the appellee was not entitled to recover exemplary damages, but also that under the evidence the jury was to determine whether appellee was entitled to recover any actual damages. The issue of damage to appellee's reputation was not submitted to the jury. It is not argued that the verdict of the jury is excessive. And, insofar as the evidence was intended to justify the arrest, or to show that the officers in making it acted without malice, the South Dakota Supreme Court has held it inadmissible on the question of actual damages. Cullen v. Dickinson, 33 S.D. 27, 144 N.W. 656, 657, 50 L.R.A.,N.S., 987, Ann.Cas.1916B, 115.

Appellants' criticisms of the remarks of the trial judge and counsel for appellee during the course of the trial have been examined and found to be wholly devoid of merit.

The judgment is affirmed.