LAWRENCE WILSON, A MINOR, BY HIS FATHER AND NEXT FRIEND, JAMES R. WILSON, APPELLANT, v. MARTIN GUTSCHENRITTER ET AL., APPELLEES, CONSOLIDATED WITH JAMES R. WILSON ET AL., APPELLANTS, v. MARTIN GUTSCHENRITTER ET AL., APPELLEES.
175 N. W. 2d 282

Filed March 13, 1970. No. 37347.

Padley & Dudden, for appellants.

Smith Brothers, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an appeal from judgments entered in two actions for false arrest and related issues growing out of the same transaction which were consolidated for purposes of trial. The trial court withdrew from the con-

sideration of the jury all issues except the issue of assault and battery in the case brought by James R. Wilson as father and next friend of Lawrence Wilson, a minor. On the latter issue, the jury returned a verdict for the defendants. The plaintiff or plaintiffs in each action have appealed to this court.

On October 9, 1967, one Larry Wilson, shortly before 3 p.m., robbed the Elm Creek State Bank at Elm Creek, Nebraska, at gun point. The robber was recognized by an employee of the bank who gave his name and description immediately to law enforcement officers. The information given as to the identity of the robber was substantially as follows: Larry Wilson, 25 years of age, 5 feet 10 inches in height, 165 pounds in weight, dark complexion, dark eyes, black hair, wearing a black hat, tan jacket, black gloves, and believed to be living in Lexington or Cozad, Nebraska. This information was immediately relayed to the Nebraska State Patrol radio station at Holdrege which immediately alerted other stations, state patrolmen, and other law enforcement officers in the area. The bank robber was later apprehended at Arapahoe, Nebraska.

The plaintiff, Lawrence Wilson, commonly known as Larry Wilson and whom we shall hereafter refer to as Larry, resided with his parents, James R. Wilson and Rose Wilson, in Lexington, Nebraska. At 3:22 p.m., the patrol station at Holdrege requested the Lexington police department to obtain information as to any vehicle registration for Larry Wilson. The defendant, John Wiley, a member of the Lexington police force, called the county treasurer's office and found that a Larry Wilson residing in Lexington was the registered owner of a 1965 red Pontiac hardtop coupé, bearing Nebraska license number 18-A766, which information was immediately given to the patrol station at Holdrege. About 3:30 p.m., the Lexington police were requested to call the defendant Martin Gutschenritter back on duty as state patrolman which was immediately done. Gutschenritter called Sergeant

Morrissey at the Holdrege patrol station and informed him that he was proceeding to the home of Larry Wilson in Lexington and asked for confirmation as to whether Larry Wilson was the person who robbed the bank. The description of the robber was given to him and he was told that Larry Wilson was the man. On the way to the Larry Wilson home, he was joined by Wiley and the two proceeded to the Wilson residence in Gutschenritter's patrol car.

On arriving at the Wilson residence, the patrol car was parked partly in the driveway and partly in the street. Gutschenritter, followed by Wiley, went to the entrance to the home. The door was open but the storm door was closed. Gutschenritter could see Larry through the glass portion of the door. Gutschenritter opened the door and asked him if he was Larry Wilson. Larry answered that he was. He asked Larry where he had been the last hour and Larry replied that he had just returned from Elm Creek. Gutschenritter thereupon drew his gun and, without a warrant, placed Larry under arrest for the robbery of the Elm Creek bank. Larry was handcuffed, was cooperative, made no resistance, and went with the officers to the patrol car.

There are conflicts in the evidence as to what occurred during the arrest. Larry and his mother testified that both officers came into the house without invitation, drew guns which they pointed at Larry, handcuffed him, and dragged him out of the house, across the front yard, and into the patrol car. Gutschenritter testified that he opened the door, stood in the doorway, asked the questions hereinbefore recited, had his gun out of its holster, and that Larry came out on the porch where he was arrested and handcuffed and taken to the patrol car. His testimony is that Larry was cooperative, made no resistance, and walked between the officers to the patrol car. He testified that Larry was in his stocking feet, that he got sandburrs in his feet, and that they helped him out of the sandburrs in crossing the yard. Wiley testified

that he did not enter the house and that he did not draw his gun although the flap on his holster was open. He generally corroborated the evidence of Gutschenritter. The evidence indicates that one of the officers, probably Gutschenritter, returned to the house. Rose Wilson testified that he came in and demanded of her where the money was hidden. There is evidence that one of the officers came back into the house to get Larry's shoes, although there was confusion as to which one did so. The jurors evidently believed the evidence of the officers as it was their province to do.

After the two officers and Larry entered the patrol car, Larry stated that he was 20 years of age and that he had gone to Elm Creek about 1 o'clock to collect a bill for his father and had returned shortly after 2 p.m. While in the car, Gutschenritter informed Sergeant Morrissey by radio that they had Larry in custody. Morrissey informed them to stay where they were and that he would be there shortly. He also told them to turn down their radio. Morrissey arrived within a few minutes, informed the officers that they had the wrong man, removed the handcuffs, and released Larry. Morrissey remained and discussed the episode with Larry and his father. Larry admitted that the description of the bank robber recited by Morrissey fitted his description closely except as to the matter of age, he being 20 instead of 25. The evidence is not disputed that Larry was held by the officers for 15 minutes before Morrissey arrived to release him. Morrissey testified that he received information from another patrolman at Overton on his way to Lexington that led him to the belief that Larry was probably the wrong man.

The pertinent facts were not in dispute. The evidence shows that Larry and the bank robber had the same name. Larry lived in Lexington and the bank robber had formerly lived there but was living in Gothenburg at the time the robbery was committed. Both fitted the description given of the bank robber by the bank em-

ployee who recognized him except for the 5-year age differential. Each had a red automobile. Larry had been in Elm Creek between 1 p.m. and 2 p.m., and the robbery had occurred at 2:55 p.m. With these undisputed facts existing, the existence of probable cause for making the arrest is for the court. The court determined that probable cause existed for the arrest and withdrew the issues of false arrest and false imprisonment as a matter of law. In this the court was correct.

The applicable law is stated in Diers v. Mallon, 46 Neb. 121, 64 N. W. 722, where in the syllabi, supported by authority in the body of the opinion, it is stated: "In the absence of any statutory power or authority a sheriff, constable, or other peace officer may arrest, without process, a person whom he has reasonble cause to believe guilty of a felony, and detain him a reasonable time until a warrant can be procured. Such officer is justified in arresting without a warrant for a felony, even though he has no personal knowledge of the guilt of the accused, if the officer in good faith acted upon information received from others upon whom he had reason to, and did, rely, although it should subsequently turn out that the one so arrested was not guilty. * * * When the testimony is conflicting, the question whether the officer had reasonable ground for believing that the person arrested had committed a felony is for the jury under proper instructions. But where the facts are conceded or undisputed, probable cause is a question of law for the court to determine. * * * Probable cause is a reasonable ground of suspicion, supported by facts and circumstances of such a nature as to justify a cautious and prudent person in believing that the accused was guilty. * * * In an action for false imprisonment against an officer for arresting without a warrant, the reasonableness of plaintiff's detention is a question for the court, where there is no conflict in the evidence as to the length of time and the circumstances under which the plaintiff

was held." See, also, State v. O'Kelly, 175 Neb. 798, 124 N. W. 2d 211.

In State v. Harding, 184 Neb. 159, 165 N. W. 2d 723, we said: "Police officers must be given reasonable latitude in judging whether probable cause exists. Unless their actions are based on an unwarranted belief that probable cause exists and are therefore unreasonable, their arrests and searches conform to constitutional guidelines. The right of an individual to be free from unwarranted intrusions on his person and property should be balanced against the need for effective law enforcement which can only exist where an officer's actions are measured objectively against a standard of reasonableness."

"Where one is properly arrested by lawful authority, even though without a warrant, an action for false imprisonment cannot be maintained." 32 Am. Jur. 2d, False Imprisonment, § 76, p. 137.

The trial court submitted the issue as to whether or not the defendants committed an assault and battery in making the arrest of the plaintiff, Larry Wilson. By instruction No. 4, the court told the jury that it was for the jury to determine if Gutschenritter and Wiley, in taking Larry into custody, used more force and violence than was reasonably necessary to safely arrest and detain him in custody; in other words, were the defendants guilty of an assault and battery upon the person of Larry. There is evidence, although disputed, that one or both pointed their guns at Larry in making the arrest. The jury could find, as it evidently did, that an officer, acting prudently and reasonably in arresting a person thought to have robbed a bank at gun point, was justified, in the interest of his own safety, in having a gun ready for use in anticipating every possible eventuality. The use of handcuffs in such cases to protect the arresting officers and to prevent the escape of one arrested for a felony is a recognized procedure. The evidence that Larry was dragged to the patrol car appears rather flimsy in view

of Larry's own evidence that the officers did not abuse him in any way. The evidence, although somewhat conflicting, sustains the finding of the jury that Larry did not sustain an assault and battery at the hands of these officers. The instructions correctly stated the law and the evidence is ample to support the finding for the defendants.

The trial court correctly directed a verdict for the defendants in the case brought by James and Rose Wilson. The court also properly withdrew the issues as to false arrest and false imprisonment in the action brought by Larry Wilson by his father as next friend. The verdict of the jury for the defendants on the issue of assault and battery is sustained by the evidence. Other errors assigned are found to be without merit and the judgments for the defendants are affirmed.

AFFIRMED.