Maribeth McGILLIVRAY, Plaintiff
and Appellant,

v.

Richard SIEDSCHLAW and Sheila Lar-
son, Defendants and Respondents.

Nos. 12260, 12261.

Supreme Court of South Dakota.

Argued June 7, 1978.

Decided May 3, 1979.

Rehearing Denied June 5, 1979.

T. R. Pardy, of Mumford, Protsch, Sage & Pardy, Howard, for plaintiff and appellant.

W. A. Hackett, of Austin, Hinderaker & Hackett, Watertown, for defendant and respondent Siedschlaw.

Fred R. Moulton and S. D. Sherwood, of Sherwood & Moulton, Clark, for defendant and respondent Larson.

DUNN, Justice (on reassignment).

This case involves a suit brought by McGillivray for false imprisonment. She alleged that defendants Siedschlaw and Larson, acting in consort, caused her unlawful arrest and imprisonment for possession of a controlled substance.[1] Specifically, McGillivray alleged that Officer Siedsch-

law, a state highway patrolman, arrested her on a drug possession charge without a warrant and without probable cause. McGillivray further alleged that Larson aided and abetted the false imprisonment by instigating the unlawful arrest. The matter was tried before a jury which rendered a verdict in favor of Siedschlaw and against Larson in the amount of $5,000 general damages. The trial court did not grant McGillivray's motion for a directed verdict against Siedschlaw, her motion for judgment notwithstanding the verdict, or her alternative motion for a new trial. The trial court did, however, grant Larson's motion for judgment notwithstanding the verdict. Accordingly, the trial court entered a judgment dismissing Siedschlaw and a judgment setting aside the jury verdict against Larson and dismissing the action against Larson. McGillivray appeals from both judgments. We reverse and remand.

McGillivray first contends that the trial court erred in not granting her motion for directed verdict against Siedschlaw because the arrest was made without probable cause and was illegal as a matter of law. Regarding Siedschlaw's liability for false imprisonment, the issue is whether his arrest of McGillivray was lawful. It is undisputed that the arrest in question was made without a warrant. Without a warrant, the arrest could be valid only if a felony had in fact been committed and Siedschlaw had reasonable cause for believing that McGillivray committed the felony. SDCL 23–22–7(3). This requirement of reasonable cause has been held to be equated with the Fourth Amendment's requirement of probable cause as follows:

"Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a belief

---

1. McGillivray was awakened and arrested at approximately 10:30 p. m. on July 21, 1974. She was subsequently booked and fingerprinted, stripped of her clothing and searched, and taken to a Watertown, South Dakota, jail cell containing only a mattress and a stool. McGillivray's parents were contacted the next morning at 11 a. m. in Madison, South Dakota, and were unable to borrow money from the bank for bail until the following morning. McGillivray was released from the jail on July 23, 1974, in the afternoon. The following week, McGillivray appeared in court, and her case was summarily dismissed because there was no evidence against her.

by a man of reasonable caution that a crime has been or is being committed." *Klingler v. United States*, 1969, 8 Cir., 409 F.2d 299, 303.

See also, *State v. Klingler*, 1969, 84 S.D. 466, 469–470, 173 N.W.2d 275, 278. It is clear that reasonable cause and probable cause must be measured against an objective standard. *Terry v. Ohio*, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Mere good faith on the part of the arresting officer is not enough. *Beck v. Ohio*, 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. Further, "when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant' * *." *Aguilar v. Texas*, 1964, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723, 726. Thus, when an officer acts on his own and without a warrant, the reviewing courts will require evidence of a more judicially competent or persuasive character.

█ With this standard in mind, we must review the facts that Siedschlaw had before him. The record reveals that Siedschlaw was given a brown pill by Larson, a cafe waitress whom he had not known previously. Larson indicated to him that she had found the pill on the rug in her apartment and that she thought her roommate was on drugs. Siedschlaw gave the pill to another officer who conducted a field chemical test. The test resulted in a positive reaction for an amphetamine substance. Both Siedschlaw and the testing officer knew that this was not conclusive without a laboratory test. In fact, it was a part of normal operating procedure to check with the State Chemical Laboratory in Vermillion for confirmation of the presence of an amphetamine substance. Siedschlaw, however, did not submit the pill to the state laboratory for such confirmation in compliance with accepted procedure. Siedschlaw did not know the roommate's name until moments before the arrest, and he did not know whether the pill which was tested did in fact belong to the roommate. About eight days passed between Siedschlaw's receipt of the pill and the arrest. In that period of time, he did not attempt to verify the information given to him, such as the roommate's name, description, activities, or the pill's true chemical content. We must conclude that on the basis of the meager facts before Siedschlaw he could not determine that a felony had in fact been committed and that the roommate committed the felony.

With regard to informant Larson's credibility, we have pointed out that the test to determine the sufficiency of an informant's tip as it relates to probable cause, as set out in *Aguilar v. Texas*, supra, has been used in determining if probable cause exists where there is an arrest without a warrant. *State v. Rigsbee*, 1975, S.D., 233 N.W.2d 312, citing *McCray v. Illinois*, 1967, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62, and *Beck v. Ohio*, supra. It is suggested that Larson's information is inherently reliable because she was a supposedly concerned citizen, as distinguished from a paid police informer. We recognize that less rigid tests of credibility should be applied under such circumstances. *State v. Gerber*, 1976, S.D., 241 N.W.2d 720. In *Gerber*, however, we recognized that credibility and reliability were demonstrated because the information furnished in several long-distance phone calls from concerned citizens was fully corroborated by officers prior to issuance of a search warrant. In turn, credibility and reliability were not demonstrated in the present case because the officer did nothing in a period of eight days to investigate or corroborate the meager information he had. Also in *Gerber*, probable cause was demonstrated to a neutral and detached magistrate prior to the issuance of a search warrant. In the present situation, this protection was not afforded to McGillivray in that Siedschlaw determined probable cause independently and went into her apartment upon Larson's consent and without a search warrant or an arrest warrant. After reading the record, we do not believe that Siedschlaw had "reasonably trustworthy information" or that a "man of reasonable caution" could conclude that a crime had been committed. Therefore, the requirement of probable cause was not satisfied and the arrest was unlawful.

In addition to the conclusion that the arrest was invalid, we are disturbed by the officer's conduct subsequent to the arrest. After McGillivray informed the officer that the pills were vitamins, those who accompanied Siedschlaw during the arrest expressed their concern that something did not seem right and that McGillivray did not seem to be on drugs. The state's attorney also suggested to Siedschlaw that McGillivray should be released on her own recognizance. Siedschlaw replied that she had already been booked and that she was going to stay in jail. The day after the arrest, McGillivray's mother showed Siedschlaw similar pills that belonged to her which were nothing more than vitamin pills. Siedschlaw responded that McGillivray was definitely high on drugs when she was arrested. Additionally, Larson and the other girls who lived with McGillivray went to Siedschlaw's home. They admitted that they had made a mistake in accusing McGillivray and stated that she was not on drugs and had never used them. Siedschlaw stated that he had a picture of McGillivray at a drug party and insisted to the girls that the pills were indeed drugs. Siedschlaw had no basis in fact for his statements that McGillivray "was definitely high on drugs" when she was arrested, or that he "had a picture of McGillivray at a drug party," or that the "pills were indeed drugs." True, these statements were made subsequent to the arrest, but they emphasize the failure of Siedschlaw to make even a cursory investigation of McGillivray prior to arrest, his disregard for the concept of probable cause, and his lack of objectivity in making the arrest. In fact, his completely inaccurate and defensive statements at this juncture lend credence to the claim that Siedschlaw knew the arrest and continuing imprisonment of McGillivray were improper and illegal.

With regard to McGillivray's motion for directed verdict against Siedschlaw, when the facts before an officer are undisputed, as they are in the present case, the determination as to whether an arrest is legal or illegal is a question of law for the court. *Anderson v. Sager*, 1949, 8 Cir., 173 F.2d 794; *Wilson v. Gutschenritter*, 1970, 185 Neb. 311, 175 N.W.2d 282. We hold that on the undisputed facts before Siedschlaw there was insufficient probable cause, and therefore the arrest was illegal as a matter of law and the trial court erred in not granting the motion for directed verdict against the officer.

McGillivray further contends that the trial court erred in granting Larson's motion for judgment notwithstanding the verdict in that the jury verdict against Larson was supported by the evidence. It is clear that a private citizen who by affirmative action, persuasion, or request assists or abets in an unlawful arrest and detention of another is liable for false imprisonment. *Catencamp v. Albright*, 1977, S.D., 251 N.W.2d 190; *Burkland v. Bliss*, 1933, 62 S.D. 91, 252 N.W. 25; *Tredway v. Birks*, 1932, 59 S.D. 649, 242 N.W. 590; *Culver v. Burnside*, 1920, 43 S.D. 398, 179 N.W. 490; *Huskinson v. Vanderheiden*, 1977, 197 Neb. 739, 251 N.W.2d 144; 32 Am.Jur.2d, False Imprisonment, § 34, p. 98. Regarding Larson's liability for false imprisonment, it appears that the jury was properly instructed as to the circumstances under which a private person may be liable for false arrest and imprisonment for requesting, directing, or instigating an unlawful arrest by a law officer.[2] The jury found that Larson was

---

2. Instruction 16 reads as follows:

"Under certain circumstances a private person may be liable for false arrest and imprisonment for requesting, directing or instigating an arrest by a law enforcement officer.

"There is no liability incurred for false arrest if a person merely gives information to an officer tending to show that a crime has been committed or if she acts solely to assist a peace officer in charge of an investigation.

"However, there may be liability for a false arrest where the acts of a person so induce an officer to make an arrest that it can be said that the arrest is not made by the officer of his own volition but made to carry out the request of such person. A person may also be held liable for a false arrest and imprisonment where she gives information that the plaintiff committed a crime when in fact she has no knowledge of such fact or that a crime had been committed."

Instruction 17 reads in pertinent part as follows:

"The plaintiff has the burden of proving the following issues to be able to recover against the Defendant Larson:

indeed liable. The trial court, however, granted judgment notwithstanding the verdict in Larson's favor, presumably on the fact that if the officer was not liable and the arrest was valid then the private citizen could not be liable either. To reverse the judgment n. o. v., some substantial, credible evidence must be found in the record in support of the verdict. We will view that record in a light most favorable to the jury verdict giving McGillivray the benefit of every available inference. *Lytle v. Morgan*, 1978, S.D., 270 N.W.2d 359; *Meylink v. Minnehaha Co-op. Oil Co.*, 1938, 66 S.D. 351, 283 N.W. 161.

In examining the record, there is substantial evidence that portrays Larson as suspecting and accusing McGillivray of stealing money from her, finding the pill, getting the other roommates concerned about it, refusing to listen to the landlady, a registered nurse, who suggested she forget about it, giving the pill to Siedschlaw, stating that her roommate was on drugs, directing Siedschlaw to do something about the pill, and meeting with Siedschlaw and the state's attorney on the afternoon preceding the arrest. In fact, Siedschlaw testified that it was because of this meeting with her that he decided to make the search and the arrest. The question of Larson's liability went to the jury, and the jury found against her. We hold that the trial court erred in granting the motion for judgment n. o. v. because the jury verdict against Larson was supported by substantial, credible evidence in the record.

The trial court erred in granting Larson's motion for judgment n. o. v. and in denying the motion for directed verdict against Siedschlaw. The judgments of the trial court are therefore reversed and the matter is remanded to the trial court for a determination of damages against Siedschlaw.

WOLLMAN, C. J., concurs.

1. That the Plaintiff was arrested and imprisoned; and
2. That the Defendant Larson instigated the arrest or imprisonment as herein defined;
3. That the arrest was illegal or without probable cause;

HENDERSON, J., concurs specially.

MORGAN, J., dissents.

FOSHEIM, J., deeming himself disqualified, did not participate.

HENDERSON, Justice (concurring specially).

I am in accord with the majority opinion but desire to express separate and additional reasons in the result.

This is an action of false imprisonment. It is founded in tort.

False imprisonment is the unlawful restraint of one's physical liberty by another. *Tredway v. Birks*, 59 S.D. 649, 242 N.W. 590.

Personal liberty is the primary right in an action for false imprisonment. It is "the right of freedom of locomotion—the right to come and go or stay, when or where one may choose." *Cullen v. Dickenson* et al., 33 S.D. 27, 31, 144 N.W. 656, 657.

In this case, the question before us is as to whether or not the appellant, a young woman and student at a vocational school in Watertown, was unlawfully imprisoned in the Codington County Jail by a highway patrolman for a period of three days; and, also, as to whether or not he was aided and abetted by her roommate, one Sheila Larson, in this alleged unlawful imprisonment.

From reviewing the record, I am convinced that the appellant was detained against her will and that this detention was totally unlawful. Furthermore, I would hold that Siedschlaw and Larson are factually and legally responsible for the three days spent in the Codington County Jail. This appears to me to be a classic case of false imprisonment of an innocent citizen by a foolish, imprudent, yet experienced, and certainly overzealous law officer of this state. His unlawful acts were triggered and initiated by the defendant, Larson, with whom he acted in consort.

4. The extent and duration of Plaintiff's injury and suffering;
5. The amount of her damages."

The essential elements of false imprisonment are: "(1) the detention or restraint of one against his will, and (2) the unlawfulness of such detention or restraint." 32 Am.Jur.2d, False Imprisonment, § 5, p. 77. False imprisonment contains two elements, namely, detention or restraint of a person, and unlawfulness of such restraint or detention. *Catencamp v. Albright*, S.D., 251 N.W.2d 190.

The officer, Siedschlaw, arrested this young woman on a drug possession charge *without a warrant* and without probable cause. The drug turned out to be a vitamin pill. The evidence never established that she was in possession of a pill or drug. Vitamin pills are in everyday use by South Dakotans and are not a controlled substance or drug.

Reviewing the record herein, it is obvious that Officer Siedschlaw had no warrant of arrest.

SDCL 23–22–7 [1] provides:

A peace officer may, without a warrant, arrest a person:

(1) For a public offense committed or attempted in his presence;

(2) When the person arrested has committed a felony, although not in his presence;

(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it;

(4) On a charge, made upon reasonable cause, of the commission of a felony by the party arrested.

Thus, this officer could only arrest, under SDCL 23–22–7(3), "[w]hen a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it." All parties, under the undisputed record as regards the existence of a felony in this case, concede that no felony was committed by appellant.

Before a peace officer can make an arrest without a warrant, he must be able to show that one of the emergencies permitting such arrest by our statute has arisen. *Raymond v. Corrigan*, 37 S.D. 609, 159 N.W. 131. A pill on a rug in an apartment shared jointly by several school girls is not an emergency situation to my way of thinking. Furthermore, there was no reasonable belief that the appellant ever possessed the pill (assumed to be a drug), bought the pill, or ever used it. No scientific or reasonable effort was made to determine if the pill was a controlled drug. *Only Larson had the pill and the officer acted upon Larson's conclusions.* Even if the pill, hypothetically, was a drug, there was no basis upon which to believe the appellant possessed or owned the pill. It was on the rug on the floor in a jointly shared apartment. How, then, could the officer have "reasonable" cause under state statute—or—"probable" cause under the fourteenth amendment of the U.S. Const. to believe that the appellant had committed a felony? The officer acted on rank hearsay of Larson and an uncorroborated belief that the pill was a drug.

As one considers the *Raymond v. Corrigan* case, supra, and ponders on the subject of "emergency," a reasonable mind would wonder: where is the "emergency" in the instant case where the officer waits for eight days from the time he received the pill until he arrested the appellant without a warrant? It is inescapable: there was no emergency. During those eight days, a reasonable man in law enforcement could have obtained a search warrant and a warrant of arrest. Nothing precluded him from doing so; instead, he proceeded outside of the law and arrested this young woman without a warrant. When he did so, he acted at his own peril. In this writer's opinion, it is this kind of police behavior and law enforcement that our courts should thwart lest this nation turn into a police state. Our freedoms, guaranteed under the Bill of Rights, must be safeguarded and preserved by a vigilant judiciary, one inch and one case at a time. Otherwise, they are eventually eroded into oblivion.

I should like to cite art. VI, § 11, of the S.D. Const. as authority for my position that this young woman has been wronged in this case: "The right of the people to be

---

1. SDCL 23 22 7 was repealed by S.D.Sess.L. ch. 178, § 577, effective July 1, 1979.

secure in their *persons* \* \* \* *against unreasonable* \* \* \* *seizures shall not be violated*, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing \* \* \* the person or thing to be seized." Mind you, her person was *seized* in her apartment at 10:30 p. m., after being awakened from sleep. The appellant's case is rooted in our Bill of Rights.

I would hold that the trial court did err in submitting the issue of probable cause to the jury. The facts reveal that Larson accused the appellant of stealing fifty dollars from her; that shortly after this accusation, Larson contacted the other roommates and suggested to them that the appellant was a user of drugs; that Larson said she found a pill on the rug and told the other girls about the pill; that Larson and three of the girls went to the landlady and the landlady expressed that they should forget it; that Larson did not forget it and contacted the defendant, Siedschlaw, he being a customer in a cafe where Larson worked as a waitress; that Siedschlaw said "it was some kind of drug" but never sent it to the University of South Dakota Laboratory for a chemical analysis; that Siedschlaw said with reference to the appellant being suspicioned of drugs that "we probably would check it out *thoroughly* by picking her up"; that Larson initiated all conversations with the other girls regarding the drugs; that the other girls were shocked when the defendant, Larson, mentioned that the appellant was on drugs; that Siedschlaw's instructions from his superiors were that if he ran a field test on a pill, that it was to be thereafter sent to the state laboratory in Vermillion for further analysis; that Siedschlaw admitted that he was the arresting officer on the night of July 21, 1974, and was accompanied by one other South Dakota Highway Patrolman and two other police officers of the Watertown Police Department, all of whom entered this apartment with the three girls' permission but not the permission of the appellant; that it was Larson who met Siedschlaw and the other three officers at the door; that Siedschlaw advised the three girls, while the appellant was asleep, that he wanted to see if he could find some controlled drug or substance on the premises; that Larson went into the bedroom and came out and handed the appellant's purse over to one of the law enforcement officers (the appellant was still sleeping); that Siedschlaw thereafter confiscated personal letters belonging to the appellant and confiscated a Buddha-type statue and two bottles of musk oil, one clear and one colored; that Siedschlaw had no search warrant at the time of taking this personal property; that Siedschlaw had the audacity, without any type of checking, to then advise the awakened appellant that the Buddha-type statue and the two bottles of musk oil were controlled substances and that she would have to come to the police station; that Siedschlaw did not interview the appellant at the police station and Siedschlaw told the state's attorney that he had booked her and that that was where she was going to stay, namely incarcerated; that absolutely no field tests on the confiscated personal property were run, which included other confiscated pills, on the night that he arrested her; that the pills confiscated on the night of the arrest were vitamin pills and of the same description and substance as the original pill found on the rug which began this classic case of false imprisonment; that Siedschlaw did nothing to establish the appellant's innocence nor require her to take any kind of a lie detector test although she was willing to take a lie detector test; that there was absolutely nothing in the letters to arouse any suspicion involving drug use; that two of the officers that accompanied Siedschlaw testified that they saw nothing unusual about the appellant on the night of the arrest and that there was nothing to make them think that the appellant was on drugs that night; that Larson went to Siedschlaw's home on one occasion and to the police station on the night appellant was arrested to find out what was going to be done to appellant as regards appellant's alleged drug involvements; that the state's attorney of Codington County, after speaking with appellant, guessed that there was something wrong and suggested to Siedschlaw that he should consider letting the young woman go out of

incarceration by releasing her on her own recognizance; that Siedschlaw did not inquire into or ascertain the credibility or reliability of Larson; that Siedschlaw refused the suggestion of the state's attorney's office and indicated that he had already booked her and that she had been arrested and that she was going to stay in jail; that three of the girls told Siedschlaw that locking up the appellant was a mistake and that appellant should be released; that Siedschlaw refused to do so; that all of the pills hereinbefore mentioned were purchased by the appellant's mother and were vitamin pills; that the items confiscated by the officer were never returned to the appellant; that appellant had to remove her clothes before a police matron, who searched her and brought her a pair of prison coveralls, whereupon she was placed in a cell where some man had just been removed to make a place for her, which had only a mattress and a stool; she was kept in this jail approximately three days, fingerprinted, and thereafter charged with feloniously and knowingly possessing a controlled drug or substance; the case, when it finally received judicial attention, was dismissed.

Appellant's motion for a directed verdict against the officer as a matter of law should have been granted. The trial court failed to instruct the jury that the officer's arrest was invalid and unlawful, as a matter of law, and that the jury had to return a verdict in favor of appellant and against Siedschlaw. *Anderson v. Sager*, 8 Cir., 173 F.2d 794; *Wilson v. Gutschenritter*, 185 Neb. 311, 175 N.W.2d 282. I would thusly remand for a jury determination of damages against Siedschlaw.

An individual directing or requesting a peace officer to make an illegal arrest is liable for false imprisonment. *Tredway v. Birks*, supra. Also, see *Burkland v. Bliss*, 62 S.D. 91, 252 N.W. 25, holding that all who participate in or assist in commission of false imprisonment are joint tort-feasors, regardless of whether conspiracy has been entered into. Further, see *Huskinson v. Vanderheiden*, 197 Neb. 739, 742, 251 N.W.2d 144, 146, holding that "[a] private citizen who by affirmative direction, persuasion, or request procures an unlawful arrest and detention of another is liable for false imprisonment."

In examining the liability of Larson, the roommate, the above-recited facts should be considered as the instigation of appellant's arrest and demonstrate how Larson directed and requested a police officer to make a warrantless arrest. The law is rife in this state that a verdict supported by sufficient, credible evidence shall not be disturbed by the reviewing court. See *Kredit v. Ryan*, 68 S.D. 274, 1 N.W.2d 813, affirming this age-long doctrine and which case concerned directly the tort of unlawful imprisonment.

In my opinion, there was sufficient and substantial evidence in the record to sustain the verdict against roommate, Larson. The jury heard the testimony given and observed the conduct and demeanor of the witnesses. In examining the record, I have concluded that the trial court erred in granting Larson's motion for judgment n. o. v. and would therefore reverse the trial court's determination and require the trial court to reinstate the jury award of $5,000 unto appellant.

In this decision, I take comfort in and cite with approval, five unlawful imprisonment decisions in the history of the court. *Tredway v. Birks*, supra; *Cullen v. Dickenson*, supra; *Catencamp v. Albright*, supra; *Raymond v. Corrigan*, supra; and *Kredit v. Ryan*, supra.

I do not break with the precedent found in *State v. Klingler*, 84 S.D. 466, 469-470, 173 N.W.2d 275, 278-279, or *Klingler v. United States*, 8 Cir., 409 F.2d 299, 303. Nor do I fault the principles in *State v. Gerber*, S.D., 241 N.W.2d 720. In *State v. Klingler*, supra, there was an armed robbery of a service station and the service station attendants furnished a description to officers of the robber and getaway car, whereupon the officers made a warrantless arrest. In *State v. Gerber*, supra, a magistrate was involved who relied upon an affidavit and corroboration to determine probable cause. In the case at bar, Officer Siedschlaw acted without objectivity, did not have reasonably trustworthy information, and did not act as a man of reasonable

caution. No felony was committed and Siedschlaw had no reasonable cause to believe this young woman had committed a felony.

If we permit officers of this state to arrest people without warrants for a felony under circumstances as depicted in this case, we are inviting an untrammeled license for officers to do as they please. No citizen shall be safe, if this officer's actions are legally blessed, from an intrusion into his home and subsequent incarceration; for indeed, if a brown pill is found on the rug on the floor of his home or apartment, albeit a vitamin pill, he is subject to arrest for a felony.

MORGAN, Justice (dissenting).

I dissent. Although I can sympathize with plaintiff for her distress, under the pleadings and record in this case, I think the trial judge acted properly.

First, he submitted the question of probable cause for the arrest to the jury. Those twelve, tried and true, found for defendant Siedschlaw. I think there was evidence to sustain this verdict.

I believe that the first question, as indicated by the majority opinion, is whether or not McGillivray was entitled to a directed verdict against Siedschlaw on the issue of probable cause to arrest. The majority, however, picks and chooses every fact and inference in favor of the movant, McGillivray, whereas the law requires that we view the evidence in the light most favorable to defendant Siedschlaw. *Lytle v. Morgan*, S.D., 270 N.W.2d 359 (1978). Applying what I consider to be the correct scope of review, the record shows that the trooper was presented with evidence by Larson, McGillivray's roommate, in the form of a pill containing an unknown substance and information that McGillivray seemed to be sleepy all the time. Larson also stated that she suspected that McGillivray was on drugs. This was a report from a supposedly concerned citizen as distinguished from a paid police informer. The trooper's cohort ran a field test on the pill that came out positive, indicating the possible presence of an amphetamine. It is true that only the first step in a recommended test procedure was taken because apparently the entire pill was used in that procedure. Probable cause, however, does not require proof beyond a reasonable doubt.[1] The other roommates in the apartment also apparently added their suspicions to those of Larson's, thereby furnishing sufficient corroboration. I would say that viewing this in a light most favorable to Siedschlaw, he had probable cause to make the initial arrest and that is all that is before us. We are only concerned with knowledge leading up to the arrest, not the subsequent events. If probable cause existed at the time of the arrest, the arrest was lawful.

While it is true that under some circumstances lawful imprisonment following a proper arrest may become unlawful, as we review the record, this issue was never presented to the trial court by motion or by proposed instruction. Although McGillivray's counsel stressed it strongly during oral argument, I would hold that, following our long-standing rule, we should not consider issues on appeal that are not properly raised before the trial court and preserved in the record. *Stark v. Stark*, 79 S.D. 178, 109 N.W.2d 904 (1961).

Finally, with respect to the liability of defendant Larson, I think McGillivray would have had a good case of malicious prosecution had it been pled and argued. It was not, however, and, counsel having hung his hat on false imprisonment, I think his arguments should fail. They are distinct and separate causes of action. A lawful imprisonment does not become unlawful because of malicious motives; nor does an unlawful detention become lawful because it was actuated by a laudable purpose.

In an action for false imprisonment, motive or malice, not being an element of the

---

1. As this court said in *State v. Hermandson*, 84 S.D. 208, 213, 169 N.W.2d 255, 258 (1969): "Officers are not required to know facts sufficient to prove guilt, but only knowledge of facts sufficient to show probable cause for an arrest or search. These are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

tort, is usually immaterial on the issue of justification and is an issue only on the question of exemplary damages. The verdict was for general damages only. Therefore, I must assume that the jury found that Larson did not act maliciously.

Nor do I see that Larson instigated the arrest. Webster's Third New International Dictionary, at page 1171, defines "instigate": "To goad or urge forward; set on; provoke, incite." From my review of the record, I cannot say that the actions of Larson amounted to instigation. She furnished information by voicing her suspicions and furnishing a pill which she found. She did have subsequent contact with the officers and cleared their path for entry into the apartment without a warrant by obtaining the consent of the other girls; but we should also consider that she was not merely a passerby or distant observer. Rather, she and the other girls were roommates with some apparent apprehension that suspicion could fall on them. Cooperation of private citizens in giving information and tips to the police is an essential part of criminal law enforcement. Many good tips are undoubtedly given by informants with malice in their hearts, but that does not give grounds for action for false imprisonment.

I would affirm the judgments of the trial court.